**BEACON LOOMS, INC., Plaintiff,**

v.

**S. LICHTENBERG & CO., INC., Defendant.**

**No. 82 CIV 7481 (LBS).**

United States District Court, S.D. New York.

Dec. 20, 1982.

Weil, Gotshal & Manges, New York City, for plaintiff; Robert G. Sugarman, Deborah M. Lodge, Susanna M. Lowy, New York City, of counsel.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant; William M. Borchard, Kay R. Sherman, New York City, of counsel.

## OPINION

SAND, District Judge.

Plaintiff Beacon Looms, Inc. ("Beacon") is currently engaged in the manufacture and sale of curtains in a design pattern it refers to as "Midge", the subject of the instant suit. Defendant S. Lichtenberg & Co., Inc. ("Lichtenberg"), a competitor of Beacon, manufactures and distributes curtains in a design pattern referred to in the course of this litigation as "Linda". The complaint, filed November 12, 1982, alleges that representatives of Lichtenberg have been advising retailers not to purchase Beacon's Midge curtains because they infringe a copyright held by Lichtenberg in the Linda pattern and because Lichtenberg will shortly seek and obtain a cease and desist order prohibiting Beacon from shipping and selling its Midge curtains. The complaint further alleges that the copyright defendant is claiming is invalid under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.,* and that defendant has engaged and continues to engage in acts of unfair competition and tortious interference with Beacon's business. The complaint seeks legal, injunctive and declaratory relief against defendant's allegedly unfounded assertions. By order to show cause filed the same day, plaintiff brought on the instant motion for preliminary relief pursuant to Fed.R.Civ. Proc. 65(a) enjoining Lichtenberg from alleging or asserting that Beacon is infringing any copyright in the pattern for curtains sold under the name Linda or that Lichtenberg is going to obtain a court order prohibiting Beacon from shipping or selling its Midge pattern curtains. Plaintiff has also moved for a declaratory judgment pursuant to Fed.R.Civ.Proc. 57 to the effect that the Linda pattern is in the public do-

main and that, consequently, Beacon is not infringing any copyright owned by defendant.

Pursuant to their agreement, the parties conducted discovery on an expedited basis, following which they filed a statement of agreed facts and memoranda of law. On November 30, 1982, the Court conducted an evidentiary hearing pursuant to rules 57 and 65, following which the parties submitted supplementary memoranda and proposed findings of facts and conclusions of law. The following constitutes the Court's findings of facts and conclusions of law pursuant to rule 52(a).

## I. FACTS

Beacon and Lichtenberg are competitors, engaged nationwide in the manufacture and distribution of curtains. Sometime in the fall of 1980, Lichtenberg purchased from Ludwig Svensson (Canada) Ltd. "Linda piece goods", i.e., dyed fabric bearing the Linda design, and Svensson's agreement not to sell goods bearing that design to anyone else in the United States. There was no discussion of copyright at that time and Lichtenberg, generally aware of the availability of copyrights for design patterns (Transcript p. 68), acted on the understanding that the design it was purchasing was not subject to copyright protection (Transcript p. 75). Since that time, Lichtenberg has shipped to retailers in the United States over one million knitted curtain panels, embodying the Linda design. Lichtenberg estimates its monthly sales of Linda-pattern curtains at 100,000 panels. Prior to November 16, 1982, no curtain panels embodying this design which were publicly distributed for sale by defendant had any copyright notice. Testimony, which the Court finds credible, was received to the effect that it is not uncommon in the curtain manufacturing industry for one manufacturer to copy another manufacturer's popular, uncopyrighted curtain pattern; nor is it uncommon for a manufacturer to seek copyright protection for some, but not all, of its copyrightable works.

Since at least October, 1981, a competing curtain manufacturer and "major company" in the industry (Transcript p. 80), Max Kahn Curtain Corp. ("Kahn"), has been manufacturing and selling a lined drapery in a pattern that is a copy of the Lichtenberg Linda design. Herbert Lichtenberg, president of defendant and one of its two shareholders, testified that he was aware as early as late November or early December, 1981, that Kahn was offering for sale drapes using the Linda pattern or, to put it in industry parlance, had "knocked off" defendant's pattern. Alan Lichtenberg, defendant's chairman of the board and other shareholder, who shared equally in the administration of the business with his brother Herbert, testified that he first became aware of Kahn's use of the Linda design in the summer of 1982. According to Herbert Lichtenberg, defendant took no action against Kahn for two reasons: first, defendant was unconcerned about the Kahn knock-off because of his belief that Lichtenberg and Kahn were not in direct competition, and that, as a result, the Kahn knock-off was not hurting Lichtenberg. Second, Lichtenberg was unaware at that time of any available recourse against Kahn.

On or about September 7, 1982, Beacon notified prospective customers that it would be selling curtains in the Midge pattern. Some of the early solicitation letters included swatches of the Lichtenberg Linda pattern curtains as examples of what the Midge curtains would look like but no orders were received by Beacon from these solicitations. By September 27, however, Beacon had actual production samples of the Midge curtains, and such samples were sent out in solicitation letters to prospective customers. The fact that Beacon copied its Midge design from Lichtenberg's Linda is not disputed.

Lichtenberg first learned that Beacon was offering to sell its Midge curtains in early September, 1982. On September 16, 1982, Sam Lichtenberg of Lichtenberg telephoned Max Sadinoff of Beacon requesting the latter to stop selling Midge curtain panels. Beacon refused.

In the course of a telephone conversation with Richard Susskind of Svensson on or about October 7, 1982 regarding the Beacon knock-off, Lichtenberg was informed for the first time that copyright was "claimed" by Svensson for the Linda pattern. On October 19, 1982, Lichtenberg received a letter from Svensson authorizing Lichtenberg to register a claim to copyright.

On November 1, Lichtenberg telephoned selected customers and read them portions of the authorization letter from Svensson and a draft letter to customers prepared by Lichtenberg, but not sent out, to the effect that Lichtenberg was the sole manufacturer authorized to use or reproduce the Linda design.

Shortly thereafter, on November 3, Lichtenberg ordered 50,000 labels with the copyright notice "Design Copyright 1980 Ludwig Svensson (Canada) Ltd.", which arrived on November 12. On November 17, Lichtenberg mailed these labels with letters to all of its customers for curtain panels embodying the Linda design asking them to affix the enclosed labels to all panels in inventory. At about this time, Lichtenberg also began to print the copyright notice on the inserts packaged with the curtain panels embodying the Linda pattern that were not yet shipped.

On November 5, Lichtenberg ordered a machine that enables copyright notice labels to be sewn into curtain panels. That same day, Lichtenberg mailed an application to register the claim to copyright in the Linda design to the United States Copyright Office with a request for special handling and checks in payment of the filing and special handling fees. Registration for the claim of copyright was granted on November 23, effective November 8, 1982, the date of its receipt in the copyright office. A day later, Lichtenberg mailed letters to Beacon and Kahn apprising them that a copyright registration had been issued for the Linda design and that Lichtenberg intended to protect its rights.

Beacon has received, as of November 15, 1982, orders for 149,318 Midge curtain panels, and has manufactured 105,412 panels,

of which 27,715 panels have not yet been shipped. Beacon has not received any cancellations of orders previously received for Midge curtain panels, but has been informed by its customers that no further orders will be placed for such curtains until its controversy with Lichtenberg is resolved. Further, one major retailer has decided to buy no new items from Beacon until this controversy is resolved.

## II. PRELIMINARY RELIEF

A party is entitled to preliminary injunctive relief if it shows

> "possible irreparable harm and either (1) probable success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor."

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 206 (2d Cir.1979). *See also Jackson Dairy, Inc. v. H.B. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979).

■ Lichtenberg's certificate of copyright registration, made within five years of first publication of the work in this country, constitutes prima facie evidence of Lichtenberg's valid copyright in the Linda design. 17 U.S.C. § 410(c). Plaintiff claims, however, that Lichtenberg forfeited its copyright by producing over a two-year period approximately one million copies of the work without any copyright notice and that the statutory provision for post-publication registration and notice are not applicable here.

■ Under the Copyright Act of 1976, where a copyright notice is required, as it is in the instant case, 17 U.S.C. §§ 401(a), 402(a), and its omission is not excused pursuant to § 405(a), the legal consequence is the forfeiture of the copyright and the release of the work into the public domain. As Nimmer notes, this result is "stated rather obliquely in § 405(a) of the Copyright Act, which provides that 'the omission of the copyright notice ... does not invalidate the copyright if' any of certain excus-

ing conditions is satisfied. The clear implication is that if none of the excusing conditions have been satisfied, then the omission of notice *does* invalidate the copyright." M. Nimmer, 2 Nimmer on Copyright, Section 7.14[A][1] (1982 ed.) (emphasis in original; footnotes omitted).

Defendant does not dispute its omission of notice, but contends that its subsequent actions have met the requirements of 17 U.S.C. § 405(a)(2), which are:

"registration for the work has been made before or is made within five years after the publication without notice, and a reasonable effort is made to add notice to all copies or phono-records that are distributed to the public in the United States after the omission has been discovered."

Plaintiff puts forth two arguments in support of its claim that defendant's actions did not meet the requirements of § 405(a)(2). First, plaintiff argues that § 405(a)(2) allows the curing of only unintentional, not deliberate, omissions of notice; and second, that in any event, defendant did not make the requisite reasonable effort. Defendant disputes the construction of § 405(a)(2) which would limit its applicability to unintentional omissions only and argues that so long as registration was accomplished within five years of publication without notice, as it was here, and "reasonable efforts" were taken to affix notice, the cure is effected and forfeiture is avoided. Defendant alternatively argues, that, even assuming that a deliberate omission of notice is not capable of cure, defendant's failure to affix notice must be characterized as unintentional, in the sense that it resulted from Lichtenberg's ignorance until October 7, 1982 of a claimed copyright in the work; accordingly, Lichtenberg's subsequent registration and affixation of notice prevented the passage of the work into the public domain. Defendant also argues that its post-publication efforts met the requirement of reasonableness. We discuss these contentions in turn below.

In interpreting § 405(a)(2), the "starting point" must, as in all instances, be the language of the statute itself. *Lewis v. Unit-*

*ed States,* 445 U.S. 55, 60, 100 S.Ct. 915, 918, 63 L.Ed.2d 198 (1980).

■ While the statute itself does not explicitly qualify the nature of the omission, the statute's use of the phrase "after the omission has been discovered" clearly suggests that it is an unintentional omission that § 405(a)(2) permits to be cured. Simply put, one cannot "discover" an omission that has been deliberate. *Cf. P. Kaufman, Inc. v. Rex Curtain Corp.,* 203 U.S.P.Q. (BNA) 859, 860 (S.D.N.Y.1978) (plaintiff took "prompt steps to remedy the omission which was apparently inadvertent").

Defendant argues, however, that weight must be accorded the legislative history underlying this section, particularly the following passage:

"Under the proposed law, a work published without any copyright notice will still be subject to statutory protection for at least five years, whether the omission was partial or total, unintentional or deliberate."

H.R.Rep. No. 94–1476, 94th Cong., 1st Sess. 147 (1976), U.S.Code Cong. & Admin.News, pp. 5659, 5763, *reprinted in* 17 U.S.C.A. § 405 Historical Note.

■ While there can be no rule against resort to legislative history to "aid the construction of the meaning of words . . . however clear the words may appear on 'superficial examination,'" *Train v. Colorado Public Interest Research Group,* 426 U.S. 1, 9–10, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434 (1976) *quoting United States v. American Trucking Association,* 310 U.S. 534, 543–44, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940), it is equally clear that a plain reading of an unambiguous statute cannot be eschewed in favor of a contrary reading, suggested only by the legislative history and not by the text itself. *Universal City Studios v. Sony Corp. of America,* 659 F.2d 963 (9th Cir. 1981).

In this instance, to attach to the above-cited legislative history the significance argued for by defendant would require that we either do violence to the statutory phrase "after the omission has been discov-

ered", or, more troublingly, in the case of deliberate omissions, effectively read out the "reasonable effort" requirement: for if there is no "discovery", it becomes impossible to ascertain the interval which must be examined to determine whether a copyright owner took reasonable efforts to affix notice. This latter interpretation would further result in either the unjustifiable anomaly of relieving one who deliberately omits notice from the "reasonable efforts" prong of subsection (a)(2) while maintaining that requirement for accidental or mistaken omissions, or the abandonment of the reasonable efforts requirement in both deliberate and unintentional omission cases.

■ One court, when confronted with the conflict between the express terms of § 405(a)(2) and its legislative history, construed "after the omission has been discovered" to mean "after 'discovery' of the fact that the existence of a copyright has become an issue". *O'Neill Developments Inc. v. Galen Kilburn, Inc.*, 524 F.Supp. 710, 714 (N.D.Ga.1981). We find this construction to lack support in either the statute or the specifically relevant legislative history. *See* M. Nimmer, 2 Nimmer on Copyright, *supra,* § 713[B][3]. Moreover, we note that even under *O'Neill's* construction of the phrase, defendant's conduct would not constitute curative action under § 405(a)(2): the discovery of facts indicating the existence of a controversy as to Lichtenberg's right to exclusive use of the pattern, a fundamental element of copyright, first occurred in October, 1981, when defendant became aware of Kahn's knock-off. *See* 17 U.S.C. § 106. Lichtenberg's failure to take reasonable efforts to affix notice at that point, would under *O'Neill* result in the forfeiture of copyright. Defendant's asserted excuse for not taking at that time any action which would have led to the discovery that Svensson had a copyright—*viz.,* its perception of an absence of direct competition from Kahn—in no way undercuts the fact that the exclusive right to the Linda design, and thus the copyright, was placed in controversy. Finally, we note the court's finding in *O'Neill* that the plaintiff "did not anticipate that anyone would ever copy the bro-

chures". 524 F.Supp. at 713. In this case, numerous copies were distributed for retail sale in an industry in which "knock-offs" are a prevalent industry practice; in at least this respect, *O'Neill* is inapposite to the instant case.

The second of the above outlined approaches, *viz.,* disregarding the reasonable efforts requirement in the case of deliberate omissions, flies in the face of the express terms of the statute and simply cannot be countenanced. *Accord Original Appalachian Artworks v. Toy Loft, Inc.*, 684 F.2d 821, 826–27 (11th Cir.1982), *affirming on other grounds* 489 F.Supp. 174, 180 (N.D.Ga.1980).

■ In addition, in holding § 405(a)(2) to relate solely to unintentional omissions, we note that this is not an instance in which the legislative history consistently articulates a rule contrary to that expressed in the statute. For example, H.R.Report No. 94–1476, *supra,* at 147, U.S.Code Cong. & Admin.News, p. 5763, also paraphrases the language at issue as follows:

"[T]he second condition established by clause (2) is that the copyright owner make 'reasonable effort,' *after discovering the error,* to add the notice to copies or photograph records distributed thereafter."

(emphasis added). *See also id.* ("after the omission is discovered"); Supplementary Report of the Register of Copyrights on the General Revision of the U.S. Copyright Law, House Committee on the Judiciary, 89th Cong., 1st Sess. 106 (May, 1965) ("the work will go into the public domain if there is no effort to correct the error").

Finally, we are confident that a construction of § 405(a)(2) that allows the cure only of unintentional omissions is not inconsistent with the Act and its general principles regarding notice. In enacting the Copyright Act of 1976, Congress made an affirmative decision to retain the notice requirement. *See* H.R.Report No. 94–1476, *supra,* at 143. At the same time, Congress recognized the often unjust and harsh consequences of forfeiture that resulted from publication with no notice or defective no-

tice under the old act, *see id.;* Report of the Register of Copyrights on the General Revision of the U.S. Copyright Law, 87th Cong., 1st Sess. 63 (July, 1961), as well as the difficulty of determining an author's subjective intent as to an absent or defective notice, as required under § 21 of the former copyright statute, 17 U.S.C. § 21 (1970 ed.). Thus, § 405(a) of the Copyright Act of 1976 effected several significant changes with regard to an omission of notice.

Subdivision (1) of that subsection, relating to publication without notice of a "relatively small number of copies" abandons the condition that the omission be the result of an accident or mistake concerning the statutory requirements, and in this instance the legislative history is wholly consistent with and amplifies the statutory language. *See* H.R.Rep. No. 2237, 89th Cong., 2d Sess. 143 (1966), *quoted in* Second Supplementary Report of the Register on Copyrights, Chap. XII, at pp. 14–15 (October-December 1975) (subjective criterion would result in injustice and confusion). Accordingly, at least to the extent that the notice requirement was retained for the purpose of placing in the public domain, as a consequence of the absence of notice, "a substantial body of published material that no one is interested in copyrighting", H.R.Rep. No. 94–1476, *supra* at 143, U.S.Code Cong. & Admin.News, p. 5759, § 405(a)(1)'s excusal of even deliberate omissions arguably represents a legislated presumption that publication of a limited number of copies is indicative of an author's intent not to pass the work into the public domain. Moreover, the provision evidences a determination that as between an author who publishes a relatively small number of copies and in so doing omits, even deliberately, the requisite notice, and a copier who relies on the absence of notice on one such copy, any resulting burden is better borne by the copier in the form of innocent infringement, *see* 17 U.S.C. § 405(b), rather than by the author in the form of forfeiture.

■ Subdivision (2) of § 405(a), on the other hand, covers the publication of numerous copies that suffer from a lack of notice, for which under the former statute there existed no possibility for cure. *See* 17 U.S.C. § 21 (1970 ed.) (excusing omissions only from "a particular copy or copies"). As discussed above, § 405(a)(2) permits the cure of unintentional omissions, while retaining the penalty of forfeiture for an omission of a deliberate nature. Construed in this manner, and in rational contrast to § 405(a)(1), this provision evidences the presumption that an author who publishes a large quantity of copies, yet omits notice, does not seek to secure copyright protection in the underlying work, a presumption that can be rebutted only by a showing, first, that the omission was unintentional; second; that reasonable efforts to affix notice were taken subsequent to the discovery of the omission, and third, that registration was effected within five years of the publication without notice.

■ We find defendant's second claim, that its omission was unintentional, to be equally untenable. Lichtenberg asserts that because it was not aware that a copyright was available, either when it purchased its license from Svensson or any subsequent time until October, 1982, its omission of notice on the Linda curtain panels must be viewed as unintentional, and thus capable of cure under section 405(a)(2).

The Court is of the view that defendant reads the statutory provision too broadly. In considering defendant's argument, the statutory antecedent is informative. That provision was applicable to instances "[w]here the copyright proprietor has sought to comply with the provisions ... with respect to notice", yet omitted notice by reason of accident or mistake. 17 U.S.C. § 21 (1970 ed.). See also an early draft of § 405, relating to an unintentional omission of notice "resulting from accident, oversight, mistake, or ignorance of the statutory requirements". Preliminary Draft for Revised U.S. Copyright Law and Discussion and Comments on the Draft, House Committee on the Judiciary, 88th Cong., 2d Sess. 23–24 (Comm. Print 1964). These earlier versions of § 405(a)(2) strongly suggest that the statute is intended to allow for the

cure of mistaken or accidental omissions of notice, rather than deliberate omissions resulting from factual mistakes as to matters wholly unrelated to notice. It appears proper to assume that § 405(a)(2) is intended primarily to apply to instances such as those in which a party sought copyright protection and, through some inadvertence, was frustrated in an attempt to affix the statutorily required notice. Viewed in this light, defendant's claim that it was unaware of its licensor's assertion of copyright in the Linda pattern and, as a result, of its own copyright in the pattern, does not permit a characterization of its omission of notice as unintentional. Moreover, we are doubtful whether, in view of the goals of copyright, see *Mazer v. Stein,* 347 U.S. 201, 219, 74 S.Ct. 460, 471, 98 L.Ed. 630 (1954), as a matter of policy copyright should be extended to a licensee and licensor who gave so slight consideration to copyright protection that it failed even to be a subject of mention in the course of negotiations leading to widespread public distribution of the allegedly protected work.

Furthermore, the Court is of the view that defendant's argument unduly minimizes the significance of Svensson's inaction with regard to its asserted copyright in the Linda work. Clearly, our inquiry here must encompass, in addition to the issue of Lichtenberg's intent, the nature of Svensson's failure to apprise Lichtenberg at the outset of the claim to copyright and to provide that the latter affix the necessary copyright notice. If such failure was of a deliberate nature, Lichtenberg's "unawareness" is of secondary importance: in that instance, the sale and distribution of the Linda curtains would constitute an authorized publication with deliberate omission of notice—*i.e.,* an omission resulting from the deliberate inaction of the copyright owner—and thus incapable of cure under § 405(a)(2).[1]

Finally, even if we were to assume, as Lichtenberg argues, that its omission is susceptible of cure under § 405(a)(2), we must still consider the issue whether Lichtenberg employed "reasonable efforts" in affixing notice after its discovery of the availability of copyright. We find that the reasonable efforts requirement was in fact not met here. As Alan Lichtenberg testified, defendant has sold to its retailing customers approximately 900,000 panels in the past nine months. Yet, defendant ordered and sent out to such customers a total of 50,000 pressure-sensitive labels bearing the copyright notice without ascertaining the quantity of curtains they still held in inventory. Alan Lichtenberg testified that it was his view that the number of labels sent out were insufficient to allow defendant's customers to affix notice to all of the Linda panels that they had in inventory. (Transcript, page 69.) The minimal additional expense and effort that ordering and sending sufficient labels to cover its customers' inventory would entail speaks to the inadequacy of its effort. It is insufficient in this regard that defendant informed its customers that "[a]dditional labels if needed will be sent". Defendant was by no means assured that customers would in fact promptly communicate the shortfall; indeed, defendant failed even to inform its customers to affix whatever labels they received at least on those panels being publicly displayed for purposes of sale, as required by the statute, requesting instead only that they be affixed to those panels "currently in stock".

In light of the above, we hold that plaintiff's showing of defendant's deliberate omission of copyright notice from approximately 1 million copies of the work, published over a two-year period—during roughly half of which time defendant was fully aware of another "knock-off" of the design—and the extent of its efforts taken in

---

1. Also relevant is the extent and nature of Svensson's sales activity with respect to the Linda piece goods and pattern, if any, prior to reaching agreement with Lichtenberg in 1980. If there were such action which constituted "publication", as defined in 17 U.S.C. § 101, of more than a relatively small number of copies, then Svensson's failure to affix notice of copyright to the piece goods would, if deliberate, result in the copyright's invalidity. This point was not addressed by the parties and we raise but do not rely upon it.

an attempt to comply with the requirements of § 405(a)(2) raise substantial and serious questions going to the merits of this case, namely, whether the Linda design pattern has been placed in the public domain and thus lawfully copied by Beacon.

■ Plaintiff has also shown that in the absence of an injunction it will suffer possible irreparable harm. Although cancellation of specific orders for its Midge curtains might result in an easily calculable amount of damages, the evidence indicates that Beacon is suffering two harms that cannot be adequately compensated by a subsequent award of monetary damages. First, as a result of Lichtenberg's communications with Beacon's customers, several have refused to purchase Beacon's Midge curtains until the instant controversy is resolved. One sizeable customer, Montgomery Ward, has simply refused to consider any new items from Beacon pending the outcome of this controversy. The lost sales to these as well as other, unidentified customers, that Beacon will suffer as a result of Lichtenberg's threat of a lawsuit would be ascertainable only with great difficulty. The presence of such difficulty has been recognized as precluding adequate legal redress for a party and constituting irreparable harm. *See Danielson v. Local 275, Laborers Int'l Union,* 479 F.2d 1033, 1037 (2d Cir. 1973); *Omega Importing Corp. v. Petri-Kine Camera Co.,* 451 F.2d 1190, 1195 (2d Cir.1971). Indeed, while the posture of the parties in this instance is reversed, the case of *Omega Importing Corp. v. Petri-Kine Camera Co., supra,* is especially relevant at least with regard to the Montgomery Ward account: when a customer fails to maintain its dealings with a given party, a competitor may reap the reward, and the loss may well persist beyond the resolution of this suit. Somewhat related to this last expressed concern is the second irreparable harm which Beacon will suffer, namely, the loss of its goodwill and business reputation. The difficulty of computing in monetary terms this harm to plaintiff has been recognized by the cases as justifying preliminary injunctive relief. *See, e.g., Dino DeLaurentiis Cinematografica, SPA v. D–150, Inc.,* 366 F.2d 373, 376 (2d Cir.1966).

■ Further, we find that the balance of hardships each party stands to suffer weighs decidedly in plaintiff's favor. Balanced against plaintiff's possible irreparable harm to both business and reputation is defendant's ability to challenge the sale by plaintiff and its customers of a design pattern that has for at least some significant period been sold by a third party with no manifest objections by defendant. Moreover, and perhaps most significant in our consideration of the balance of hardships is what appears at this stage of the proceedings to be the applicability of § 405(b), even were we ultimately to find for defendant on the issue of cure under § 405(a)(2).

Section 405(b) provides that where infringement is the result of a party's reliance on the omission of notice from an authorized copy, the court may deny an injunction against the infringing undertaking and, as a condition for permitting the continuation of the infringing activity, require that the infringer pay a reasonable licensing fee as determined by the court. 17 U.S.C. § 405(b). As the relevant legislative history makes clear, the purpose of this provision is "to give the courts broad discretion to balance the equities within the framework of section 405", H.R.Rep. No. 94–1476, *supra,* at 148, U.S.Code Cong. & Admin.News, p. 5764. In light of the fact that Beacon's expenditure of capital and effort in undertaking the manufacture and sale of the Midge curtain was made in the context of no notice on Lichtenberg's Linda curtain; no assertion of copyright by Lichtenberg prior to and for at least one month after Beacon's initial production efforts; no prior registration of a claim to copyright; and finally, no manifest objection by defendant to the Kahn knock-off, we are of the preliminary view that the cease-and-desist order against Beacon and its customers that defendant is threatening to obtain would in any event be denied and a licensing arrangement would instead be ordered by the Court pursuant to § 405(b).

■ As a final matter, we note and dismiss defendant's claim that plaintiff's re-

quest for a preliminary injunction be denied on the ground that plaintiff used the Linda swatches in early September, 1982, to solicit customers for its Midge curtains. The Court finds that such action does not result in plaintiff having unclean hands so as to preclude the grant of injunctive relief in its favor. Defendant has not alleged, nor does it appear to the Court, that plaintiff's use of the Linda design was "willful or deceitful", *see Precision Instrument Manu. Co. v. Automotive Maintenance Machine Co.,* 324 U.S. 806, 814–15, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945), or that plaintiff is seeking to enforce rights it acquired directly as a result of its allegedly wrongful action, *see Republic Moulding Corp. v. B.W. Photo Utilities,* 319 F.2d 347, 351 (9th Cir.1963).

In light of the above discussion, we grant plaintiff's request for preliminary injunctive relief and hereby enjoin defendant, its agents, servants, officers, employees, and all those acting under its control or on its behalf from alleging or asserting that plaintiff is infringing a copyright in the pattern for curtains sold under the name herein referred to as Linda or that defendant will seek and obtain a court order prohibiting plaintiff from the shipping or sale of its Midge curtains by reason of a copyright held therein by defendant.

### III. DECLARATORY RELIEF

The Declaratory Judgment Act provides that declaratory relief may be had "whether or not further relief is or could be sought." 28 U.S.C. § 2201. Accordingly, the fact that plaintiff seeks, and may be deserving of, preliminary injunctive relief does not preclude the entry of a declaratory judgment if appropriate in the instant case. Fed.R.Civ.Proc. 57. *See generally* 6A Moore, Federal Practice ¶¶ 57.07, 57.08[3], 57.10.

Although, as stated above, the Court finds plaintiff entitled to preliminary injunctive relief, we are not prepared at this stage of the proceedings on the basis of the evidence now before the Court to issue the final declaratory relief we understand plaintiff to be seeking. The resolution of

the validity of defendant's claim to copyright in the Linda pattern would better await a full trial on the merits, at which time the Court would also consider, if necessary, the further relief plaintiff seeks, as well as plaintiff's underlying causes of action. Recognizing, however, that the circumstances of this case make its speedy resolution particularly appropriate, the parties are directed to confer and submit one week from the date herein a jointly proposed discovery schedule so as to facilitate the Court's intention to try this matter expeditiously.

Settle order.