**SHAPIRO & SON BEDSPREAD CORP.,**
**Plaintiff-Appellant-Cross-Appellee,**

v.

**ROYAL MILLS ASSOCIATES, a partnership, Isadore Gindi, Joseph Gindi, Sam Gindi, Joseph Home Decoration, Inc., and Roto-Print Machinery Corp., Defendants-Appellees,**

**Royal Mills Associates, Isadore Gindi, Joseph Gindi, and Sam Gindi, Defendants-Appellees-Cross-Appellants.**

**Nos. 544, 677, Dockets 84–7739, 84–7765.**

United States Court of Appeals, Second Circuit.

Argued Dec. 21, 1984.

Decided May 22, 1985.

---

Donald L. Kreindler, New York City (Kreindler & Relkin, P.C., New York City, of counsel), for plaintiff-appellant-cross-appellee.

Ezra Sutton, Woodbridge, N.J., for defendants-appellees-cross-appellants.

Before VAN GRAAFEILAND, PIERCE and WINTER, Circuit Judges.

PIERCE, Circuit Judge:

This case involved cross-suits before Robert Sweet, Judge, in the United States District Court for the Southern District of New York. It arose from a dispute between two competitors that manufacture bedspreads and accessories (hereinafter referred to simply as "bedspreads"). The plaintiff and appellant Shapiro & Son Bedspread Corp. ("Shapiro") contends that the district court erred in dismissing its complaint of copyright infringement on a motion for summary judgment. The defendants and cross-appellants Royal Mills Associates, and three of its individual partners ("Royal") claim error in the district court's dismissal of their counterclaim, which alleged that Shapiro's action was brought in bad faith and sought damages and a declaratory judgment that Shapiro's claimed copyright was invalid.

For the reasons hereinafter stated, we reverse the district court's dismissal of Shapiro's claim, and we affirm the dismissal of Royal's counterclaim.

### BACKGROUND

The essential facts of this case are few and garnered from an undeveloped record, but are largely undisputed. On October 28, 1978, Shapiro published a new fabric design, entitled "6723-4 Lace Fantasy" ("Lace Fantasy"), to be incorporated into bedspreads. Lace Fantasy soon became Shapiro's best-selling line, with sales aggregating more than 500,000 units from the design's inception until this action was commenced on May 26, 1983. The bedspreads were distributed and sold in heat-sealed plastic bags. During the above period, all of the Lace Fantasy bedspreads distributed by Shapiro contained a printed flyer inserted into the heat-sealed bags containing the bedspreads. The flyer bore the words "Design Copyrighted."

In April, 1983, Shapiro learned that its competitor, Royal, was selling bedspreads under the name "Lace Splendor" with a design strikingly similar to Lace Fantasy,[1] but at a lower price than Shapiro's product. Shapiro then took steps to register a claim of copyright for its Lace Fantasy design. During this process, Shapiro became aware that the flyers it was inserting into the bags containing its bedspreads were legally insufficient to sustain a claim of copyright. The record indicates, and Royal concedes, that Shapiro took measures to affix an appropriate copyright notice to all bedspreads already manufactured but still in its possession,[2] and to all those subsequently manufactured. Joint Appendix at 37-38,

---

1. Judge Sweet noted that "[t]he identity of size, dimension, curve and angle is so striking that the conclusion that Royal's design was created by laying tracing paper on Shapiro's pattern would not be an unreasonable one." 568 F.Supp. 972, at 979 (S.D.N.Y.1983).

2. Shapiro asserts on appeal that it had approximately 25,000 defectively-labelled bedspreads on hand, which it re-labelled. We are unable to find support in the record for this, but in any event do not rely upon this figure, noting only that the number of bedspreads re-labelled by Shapiro remains a material fact in dispute, bearing upon the reasonableness of Shapiro's efforts.

122–25; Brief for Defendants-Appellees-Cross-Appellants at 6. The copyright registration form submitted to the Library of Congress contained, in addition to a copy of the flyer bearing the defective notice, a photograph of a Lace Fantasy bedspread with a sewn-in label bearing the typewritten words "Copyright by Everwear." This copyright notice apparently was not identical to the corrected notice that was actually affixed to Shapiro bedspreads after the deficiency in the earlier notice was discovered. Royal claims this constitutes a misrepresentation, but does not contest the sufficiency of the labels now affixed by Shapiro, nor does it argue that the label submitted with the copyright registration application was insufficient.

After it obtained registration of its copyright, Shapiro wrote to Royal demanding that Royal cease infringing the Lace Fantasy design. Royal rejected the demand, and this action followed.

In a decision dated July 25, 1983, Judge Sweet denied Shapiro's motion for a preliminary injunction. This decision was based on his finding that Shapiro's publication of the Lace Fantasy design for close to five years, coupled with its failure to present evidence showing that a "cure" of the publication without proper notice had been effected, left Shapiro with only a slim chance of success on the merits and did not raise sufficiently serious questions going to the merits to make them a fair ground for litigation. *Shapiro & Son Bedspread Corp. v. Royal Mills Associates*, 568 F.Supp. 972 (S.D.N.Y.1983). By order dated February 10, 1984, Judge Sweet granted Royal's motion for summary judgment. This ruling, which is now before us, relied heavily upon his earlier denial of a preliminary injunction, and was predicated specifically upon the court's determination that Shapiro had failed to demonstrate that it had made any effort to add proper notice of copyright to those bedspreads bearing deficient notice, and which had not yet been "distributed to the public" within the meaning of section 405(a) of title 17, U.S.Code.

Accordingly, the court held Shapiro's copyright to be invalid and dismissed the complaint. Some months later, by order dated August 9, 1984, Judge Sweet dismissed Royal's counterclaim, which had alleged that Shapiro's action was brought in bad faith and sought damages and a declaratory judgment that Shapiro's copyright was invalid. Judge Sweet observed that his earlier holdings regarding Shapiro's failure to cure its defective notice involved issues of first impression in this Circuit and elsewhere, and thus that Shapiro's action was not brought with malice, but rather was colorable. He further found that Shapiro, in its application for registration of copyright, made no misrepresentations to the Register of Copyrights that would sustain a finding that the action was brought maliciously.

### Discussion

#### A. The Shapiro Appeal

██ Shapiro jeopardized its present claim of copyright in the Lace Fantasy design by publishing it without proper notice of copyright for the period October 1978 to April 1984, during which the only notice on the product was the words "Design Copyrighted" which appeared on the flyer inserted into the bags containing the bedspreads. Shapiro's original notice was deficient in two respects: (1) it was not in the form specified by 17 U.S.C. section 401(b), which requires that in the case of a copyrighted design reproduced in or on a "useful article," the legend "Copyright," "Copr." or the symbol © be followed by the name of the owner of copyright in the work; and (2) it was not "affixed to" the work, as required by section 401(c). In general, publication of a work without a proper notice of copyright affixed injects the work into the public domain. *See* 17 U.S.C. § 405(a) (1982); 2 M. Nimmer, *Nimmer on Copyright* § 7.14[A] (1984).

Section 405(a), however, permits a defective notice to be cured[3] and copyright to attach, if certain conditions are met:

---

**3.** Although section 405(a) speaks in terms of the "omission" of notice, "[t]he legal consequences

(1) proper notice was omitted from only a relatively small number of works distributed to the public; or

(2) copyright registration for the work is effected within five years of the publication without proper notice, and a reasonable effort is made to add proper notice to all works that are distributed to the public after the omission of proper notice has been discovered; or

(3) proper notice was omitted by a third party in violation of the copyright owner's express written requirement that it be included.

*See* 17 U.S.C. § 405(a) (1982).

■ In view of the concededly large number of works bearing defective notice that Shapiro distributed (more than 500,-000), and of the absence of any suggestion that anyone other than Shapiro was responsible for the defective notice, it appears that the only applicable section 405 curative provision is subsection (a)(2). Consequently, the principal issue presented is whether Shapiro's efforts to add proper notice to all works distributed to the public after the defectiveness of the original notice was discovered were "reasonable" within the meaning of section 405. If they were, Shapiro may be found to have cured its earlier omission of proper copyright notice by making a reasonable effort to add notice, and by effecting copyright registration within five years of the initial publication without notice. Shapiro would then have several possible remedies against infringers. *See* 17 U.S.C. §§ 501–509 (1982).[4] If, on the other hand, Shapiro's efforts were not "reasonable" within the meaning of section 405, it would have no valid claim to copyright in the Lace Fantasy design, and that design, by virtue of its publication without proper notice, now would be in the public domain. 17 U.S.C. § 405(a) (1982).

The question whether efforts made to cure defective notice are "reasonable" has not yet been exhaustively examined by the courts. *See* 2 M. Nimmer, *Nimmer on Copyright* § 7.13[B], at 7–94 (1984). It nevertheless seems clear that if *no* effort is made to add proper notice to copies distributed to the public after the defective notice is discovered, no cure is accomplished. When, however, some effort is made, the question whether it was "reasonable" is one of fact. *Cf. In re M/T Alva Cape,* 405 F.2d 962, 969 (2d Cir.1969) (whether precautions taken to avert explosion were "reasonable" requires full exploration of surrounding circumstances).

■ Section 405(a)(2) requires reasonable efforts to add notice to "all copies … that are distributed to the public in the United States after the omission has been discovered." A fair reading of this language indicates that it covers *all* copies bearing defective notice at the time the defect is discovered,[5] and which have not yet been distributed to the public—that is, all those copies which are distributed to the public

are the same regardless of whether there has been an omission of any notice whatsoever, or whether an improper notice … is used." 2 M. Nimmer, *Nimmer on Copyright* § 7.14, at 7–102 n. 1 (1984). This conclusion, moreover, is completely consistent with the language of section 405, which expressly relates to the "omission of the copyright notice prescribed by sections 401 through 403"—that is, the omission of *proper* notice, which encompasses the inclusion of *defective* notice. *See also* 17 U.S.C. § 406(c) (1982) (copies publicly distributed by authority of copyright owner without a notice containing name and date are considered to be published without notice and claims of copyright therein are governed by section 405).

**4.** We note, however, that by publishing the design for some 4½ years before effecting copyright registration, Shapiro may no longer seek the remedies of statutory damages or attorney's fees. 17 U.S.C. § 412 (1982).

**5.** We note that the time of "discovery" of improper notice, at least where the claimant has intentionally failed to include notice, has been considered by some to take place at the time of the first publication of the work. *See Beacon Looms, Inc. v. S. Lichtenberg & Co.,* 552 F.Supp. 1305 (S.D.N.Y.1982); 2 M. Nimmer, *Nimmer on Copyright* § 7.13[B][3] (1984). Here, however, there was clearly some attempt made by Shapiro to protect its rights by including a copyright notice, albeit defective; in such a case, "discovery" of the omission of proper notice takes place when the claimant is apprised that the notice is for some reason insufficient for its intended purpose.

after the defect is discovered. In Shapiro's case, these copies include those in its own hands when the defective notice was discovered and thereafter, as well as those at an intermediate state in the distribution chain, having left Shapiro's facilities but not yet sold to consumers. All of these are copies which bore defective notice, and which had not yet been distributed to the public within the meaning of section 405(a)(2).

In dismissing Shapiro's complaint, the district court held that "no action to affix the required notice [was taken] by Shapiro," and accordingly granted Royal's motion for summary judgment. Slip op. at 4 (S.D.N.Y. Feb. 3, 1984). In doing so, however, the court seems to have disregarded the inventory of defective bedspreads that Shapiro itself had on hand. Upon discovering that the notice was defective, it appears that Shapiro took prompt steps to correct the notice on the bedspreads in its inventory and to ensure that it shipped no further units without proper notice affixed.

■ Consequently, the record does not support the conclusion that "no action" to cure the defective notice was undertaken by Shapiro. Rather, the question becomes .whether the efforts that were undertaken may be held to be unreasonable as a matter of law, in order to sustain the district court's grant of summary judgment to the defendants. In our view, Shapiro's actions cannot be deemed to be unreasonable as a matter of law.

The number of bedspreads in Shapiro's possession vis-a-vis those already shipped is a still-unresolved question of fact. Shapiro concedes, however, that although it re-labelled the inventory still in its possession, it took no steps to add proper notice to those bedspreads already shipped to retailers but not yet sold to consumers. This decision, according to the affidavit of Shapiro's president, was made because the bedspreads were typically sold in small quantities to numerous retailers, whose turnover of the bedspreads was rapid. In Shapiro's view, efforts to add notice to these bedspreads would have been unavailing, chiefly because by the time the information regarding distribution of the product could be gathered and proper notice prepared and distributed, the defective inventory would already have been sold. Additionally, Shapiro asserts that attempts by retailers to properly "affix" notice to the bedspreads would render the bedspreads unsaleable to consumers, because the retailers would have to open the heat-sealed bags in which the bedspreads were contained and would not be able to re-seal those bags.

Royal, however, chiefly relying upon *Beacon Looms, Inc. v. S. Lichtenberg & Co.*, 552 F.Supp. 1305 (S.D.N.Y.1982), contends that Shapiro's failure to undertake efforts to add proper notice to the already-distributed bedspreads rendered summary judgment appropriate in this case. We disagree.

In *Beacon Looms*, which involved allegations of infringement of a design for curtain panels, the district court held that the sending of only 50,000 pressure-sensitive labels to customers, who had ordered 900,-000 panels in the preceeding nine months, was not a "reasonable" attempt to cure the omitted notice. Accordingly, the court granted a preliminary injunction against the assertion by the defendant of copyright in the curtain design. 552 F.Supp. at 1313–14.

We do not believe that the rationale of *Beacon Looms* applies to the case before us. In *Beacon Looms*, there did not appear to be any evidence regarding the turnover rate of the panels distributed to retailers. Further, no notice at all had been affixed to the panels, possibly misleading a purchaser into believing no copyright was claimed. Finally, there was testimony in *Beacon Looms* that the purported copyright claimants themselves believed that the number of pressure-sensitive labels they had sent in order to remedy the defect was insufficient to cover the number of units remaining in the hands of retailers. *Id.* at 1313. Here, by contrast, the record suggests that there was a rapid turnover of inventory, which could lead to a finding that efforts to re-label product already

shipped would have been unavailing; moreover, some form of notice, albeit defective, had been included, so that a purchaser would be aware that some proprietary claim was being asserted.

Other district court cases that have considered whether efforts to add curative notice are "reasonable" have also involved efforts by the copyright claimants to add notice to units no longer in their own possession. *E.g., Florists' Transworld Delivery v. Reliable Glassware Co.,* 213 U.S. P.Q. (BNA) 808 (N.D.Ill.1981). We do not, however, believe that the mere consideration of this factor elevates it to the status of a statutory requirement under section 405. Although such a factor is clearly relevant, the fundamental inquiry remains whether the efforts undertaken in a given case, viewed as a whole, were "reasonable." *See O'Neill Developments, Inc. v. Galen Kilburn, Inc.,* 524 F.Supp. 710 (N.D. Ga.1981). Here, where the record indicates that at least some of the bedspreads bearing defective notice and not yet distributed to the public were apparently properly relabelled, there remains an issue of fact as to how many were re-labelled compared to those not re-labelled. Further, there is an issue as to whether Shapiro's efforts to relabel product already shipped would have been unavailing. In sum, there remains a material question of fact as to whether Shapiro's efforts, taken as a whole, were reasonable. It is well-settled that summary judgment is improper where material issues of fact remain to be determined; the burden is upon the movant to show the absence of such issues, and we read the record in the light most favorable to the party opposing the motion. *E.g., Falls Riverway Realty, Inc. v. City of Niagara Falls,* 754 F.2d 49, 54 (2d Cir.1985). We accordingly conclude that the district court's grant of summary judgment on the question of the reasonableness of Shapiro's efforts was error, and therefore reverse and remand for further proceedings in the matter.

### B. The Royal Cross-Appeal

Royal has cross-appealed from Judge Sweet's dismissal of its counterclaim, which sought a declaratory judgment that Shapiro's copyright was invalid, and damages caused by Shapiro's allegedly bringing this action in bad faith. Whether or not Shapiro ultimately prevails on its claim, however, we see no basis for a ruling that its action was brought in bad faith. Accordingly, we affirm the dismissal of Royal's counterclaim.

■ Royal also contends that in view of the alleged invalidity of Shapiro's copyright claim, Shapiro's actions in notifying Royal's customers that Royal was infringing Shapiro's copyright and that this could have adverse legal consequences for sellers of Royal's allegedly infringing product unlawfully interfered with Royal's business. In our view, however, Shapiro's actions were not improper, since if in fact Shapiro has a valid copyright in the Lace Fantasy design, as may prove to be the case, sellers of infringing works may indeed be subject to certain sanctions. 17 U.S.C. §§ 106, 501 (1982).

■ Finally, Royal alleges that Shapiro "made a misrepresentation" to the Register of Copyrights by submitting, in connection with its copyright application, a photograph of a Lace Fantasy bedspread with a sewn-in copyright notice that was not identical to the one actually affixed to the bedspreads. This, Royal claims, warrants reversal of the district court's grant of summary judgment to Shapiro on Royal's counterclaims. We disagree. Since the notice submitted to the Register apparently complied with the statutory requirements, as did the notice actually affixed by Shapiro after it discovered the original defect, in our opinion any "misrepresentation" that may have taken place is de minimis and does not warrant reversing the dismissal of the counterclaim.

### CONCLUSION

For the reasons hereinabove stated, we affirm the district court's dismissal of Royal's counterclaim, and reverse and remand the dismissal of Shapiro's claim of copy-

right infringement for further proceedings on the question of the reasonableness of Shapiro's efforts to cure the defective copyright notice packaged with its bedspreads.