BARRIS/FRASER
ENTERPRISES, Plaintiff,

v.

GOODSON–TODMAN ENTERPRISES,
LTD., Defendants.

No. 86 Civ. 5037 (EW).

United States District Court,
S.D. New York.

July 8, 1986.

Cowan, Liebowitz & Latman, P.C., New York City, (Roger L. Zissu, David Goldberg, Lillian J. Laserson, of counsel), Mitchell, Silberberg & Knupp, Los Angeles, Cal., for plaintiff; Roger Sherman, of counsel.

Pryor, Cashman, Sherman & Flynn, New York City, for defendants; Stephen F. Huff, Phillip R. Hoffman, Tom J. Ferber, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff Barris/Fraser Enterprises (Barris/Fraser) is the producer of a pilot[1] of a television game show entitled "Bamboozle," which it is attempting to market as a series to the American Broadcasting Company (ABC). Defendant Goodson-Todman Enterprises, Ltd. (Goodson-Todman) is also a producer of television game shows and owns the copyright on the show "To Tell the Truth," which was shown on television for many years. Goodson-Todman, contending that Barris/Fraser's "Bamboozle" pilot bears some similarity to "To Tell the Truth," wrote a letter to ABC on March 24,

---

1. A pilot is a television program taped as a sample of a proposed series and used by television production companies to interest broadcasters in the series.

1986, stating that if "Bamboozle" infringed upon its copyright on "To Tell the Truth," Goodson-Todman would "take all steps necessary to restrain and/or recover damages for any infringement of its rights."[2]

Barris/Fraser has since commenced this declaratory judgment action for a decree that Goodson-Todman's letter constitutes tortious interference with its relationship with ABC and that "Bamboozle" does not infringe upon defendant's copyright. Barris/Fraser further seeks damages and a permanent injunction against defendant's alleged interference. Pending trial on the merits, Barris/Fraser moved for a temporary restraining order, which was denied, and now moves for a preliminary injunction requiring that defendant 1) refrain from communicating to any of the three major networks any claim that "Bamboozle" violates any of defendant's rights in "To Tell the Truth," and 2) withdraw in writing the threat of suit contained in its March 24 letter to ABC.

Barris/Fraser developed the concept of "Bamboozle" in January 1986, and in February 1986 it entered into a contract with ABC to produce the pilot for the show.[3] The contract obliges ABC to reimburse Barris/Fraser for the cost of producing the pilot, and grants ABC an exclusive option to order "Bamboozle" as a series within nine months following delivery of the completed pilot to ABC. All payment for the pilot and the series, however, is contingent upon plaintiff's obtaining "errors and omissions" insurance for each, naming ABC as an insured. Although plaintiff's counsel has stated that plaintiff has not yet obtained such insurance, ABC has to date reimbursed plaintiff for $150,000, or approximately half the cost of producing the pilot. Barris/Fraser completed the pilot and delivered it to ABC on March 26, 1986, and as of June 16, 1986, ABC was using the pilot in test marketing to determine the program's appeal to television audiences.

At about the time Barris/Fraser completed the pilot, the correspondence at the heart of this litigation ensued. On March 24, 1986, Goodson-Todman addressed to ABC the above-mentioned letter stating that if "Bamboozle" infringed upon the copyright on "To Tell the Truth," defendant would take legal action. ABC did not respond to the letter. Instead, plaintiff replied on April 1, 1986, stating that it did not intend to infringe upon defendant's copyright and did not believe that its pilot did so. Plaintiff wrote defendant again on May 12, 1986, this time sending a video cassette of the "Bamboozle" pilot and stating that if defendant did not withdraw its warning letter to ABC within a week, plaintiff would bring suit. Defendant did not reply, and plaintiff instituted this action on June 25, 1986.

The Second Circuit's standard for granting preliminary injunctions is well-established. A preliminary injunction should be granted "where the moving party demonstrates (1) irreparable harm and (2) either (a) a probability of success on the merits or (b) sufficiently serious questions going to the merits to make them fair grounds for litigation and a balance of hardships tipping decidedly in the moving party's favor."[4] Thus, before any consideration of the merits, the plaintiff has the burden of proving irreparable harm. To sustain this burden, plaintiff must show that it is "likely to suffer irreparable injury" if such relief is denied[5] and that "the alleged threats of irreparable harm are not remote or spec-

---

**2.** Letter from Royal E. Blakeman to John Sias, President of ABC (Mar. 24, 1986).

**3.** The following description of the contract is based upon the redacted version supplied by the plaintiff.

**4.** *Church of Scientology Int'l v. The Elmira Mission of the Church of Scientology*, 794 F.2d 38, 41–42, (2d Cir.1986); *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir. 1985).

**5.** *In re Feit & Drexler, Inc.*, 760 F.2d 406, 415–16 (2d Cir.1985); *see Proctor & Gamble Co. v. Chesebrough-Pond's, Inc.*, 747 F.2d 114, 118 (2d Cir. 1984); *Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70, 72 (1979).

ulative, but are actual and imminent." [6] Plaintiff fails to meet this burden.

Barris/Fraser alleges that Goodson-Todman's notice letter threatening copyright litigation has caused it three types of irreparable injury. These are 1) interference in the sale of "Bamboozle" as a series to ABC; 2) loss of profits from sales of "Bamboozle" in syndication and from exploitation of ancillary rights; and 3) injury to Barris/Fraser's reputation, credibility, and goodwill. Each of these claimed injuries will be discussed in turn.

Barris/Fraser's main claim of irreparable injury is the defendant's alleged interference in the sale of "Bamboozle" as a series to ABC. An affidavit from Budd Granoff, President of Barris Industries, states that the defendant's letter is "likely to have an adverse effect on ABC's consideration of BAMBOOZLE" and "casts a serious cloud" on the program.[7] ABC Vice President Wallace Weltman affirms in his affidavit that "the threat of a lawsuit is ... a factor which ABC must consider when evaluating and making its decision with respect to BAMBOOZLE.... Thus, unless and until this threat is withdrawn, ABC cannot judge BAMBOOZLE solely on its merits." [8] As additional support for its claim of irreparable injury, plaintiff notes that ABC has not yet exercised its series option on "Bamboozle."

Upon a motion for a preliminary injunction, "[t]he likelihood of injury and causation will not be presumed, but must be demonstrated in some manner." [9] Yet plaintiff has not presented any evidence that links defendant's letter with any action that may be taken or has been taken by ABC. Barris/Fraser only asserts that the letter might be responsible for ABC's failure thus far to exercise its series option. In the face of plaintiff's lack of proof, however, defendant offers the plausible alternative explanation that ABC has not adopted the series yet because its market testing is not yet complete and because ABC would not, in any case, begin the series in the summer, when the size of the television viewing audience is at its ebb. Moreover, the statements of the ABC and Barris/Fraser officials are vague with respect to whether ABC might actually reject the offered series solely on account of the defendant's notice letter alleging infringement of its copyright on "To Tell the Truth." While it may be acknowledged that the threat of a lawsuit may be a factor influencing ABC's judgment with respect to exercising its rights under the contract, ABC officials have not indicated that the defendant's letter would cause their decision to differ from what it would be if the market testing proves favorable.

Plaintiff has attempted to bolster its argument that defendant's letter may prevent the sale of "Bamboozle" to ABC by asserting that the letter has made it difficult to obtain the "errors and omissions" insurance for the series that is required under the contract with ABC. Such insurance, although it is not clear from the moving papers, apparently covers claims of copyright infringement. Plaintiff's counsel asserts that because of defendant's letter, Barris/Fraser "may not be able to obtain insurance for 'Bamboozle,'" except upon payment of what he terms an "exorbitant"

6. *State of New York v. Nuclear Regulatory Comm'n,* 550 F.2d 745, 755 (2d Cir.1977).

7. Affidavit of Budd Granoff, June 16, 1986 at ¶¶ 13, 15–16.

8. Affidavit of Wallace Weltman, June 30, 1986 at ¶ 5.

9. *Coca-Cola Co. v. Tropicana Prods., Inc.,* 690 F.2d 312, 316 (1982). The cases cited by plaintiff in its reply brief to support its claim of loss of sales all had some concrete evidence of such loss. In the two Lanham Act cases cited, market research indicated that the alleged false advertising did mislead consumers. *See Coca Cola, supra,* at 317; *Vidal Sassoon, Inc. v. Bristol-Myers Co.,* 661 F.2d 272, 278–79 (2d Cir. 1981). In two cases involving the circulation of claims of copyright infringement, there was evidence that some sales had already been lost because of the claims. *See Beacon Looms, Inc. v. S. Lichtenberg & Co., Inc.,* 552 F.Supp. 1305, 1314 (S.D.N.Y.1982); *Solex Laboratories, Inc. v. Butterfield,* 202 F.Supp. 461, 462 (D.Ore.1961) (relying upon facts in *Solex Laboratories, Inc. v. Plastic Contact Lens Co.,* 268 F.2d 637, 640 (7th Cir.1959)).

sum.[10] And in a letter sent to the Court after decision had been reserved at oral argument, plaintiff's counsel further suggests that the reason why ABC has only reimbursed Barris/Fraser for half the cost of producing the pilot is that plaintiff has not yet obtained the required errors and omissions insurance for the pilot.[11]

Yet plaintiff has made no showing at all that it cannot obtain the needed insurance. Plaintiff has presented no evidential matter concerning what ABC expects the errors and omissions insurance to cover, what a normal premium is, what increase in the premium is due to the defendant's letter,[12] and what increase plaintiff can afford. Moreover, plaintiff makes no mention of seeking such insurance from any source other than its current insurer. The fact that plaintiff may have to pay an increased premium is irrelevant to the rights asserted by the parties and does not establish irreparable harm. Indeed, if plaintiff purchases the insurance it will not only prevent irreparable harm to its relationship with ABC, but it will also render the alleged cost of defendant's notice letter more readily quantifiable in the event that plaintiff ultimately succeeds in its copyright litigation.

Barris/Fraser's additional claims of irreparable injury—loss of profits from syndication and exploitation of ancillary rights, and loss of goodwill and injury to reputation—are no more convincing. Plaintiff's proof that these harms will come about depends in the first place on its proof that defendant's letter will cause ABC to reject the series. This dependence is evident from plaintiff's explanation that profits from syndication and exploitation of ancil-

lary rights are threatened if a network does not first broadcast the series[13] and from plaintiff's argument that goodwill would be injured if ABC " 'fails to maintain its dealings' " with plaintiff.[14] Because plaintiff has not proven that defendant's letter will lead to rejection of the series by ABC, it has not proven these further injuries. Moreover, if Barris/Fraser is concerned that litigation over "Bamboozle" will tarnish its reputation and destroy its goodwill more generally, it has introduced no evidence that this is likely to occur. Indeed, the fact that ABC—the only party known to have received defendant's letter—is continuing to deal with plaintiff suggests that plaintiff's reputation is not endangered. Such damage cannot be presumed simply from the fact that defendant sent its letter.

Given the lack of proof needed to sustain its burden to establish an immediate threat of irreparable injury, plaintiff's motion for a preliminary injunction seems actually to be an effort to obtain an advisory opinion from this Court that "Bamboozle" does not infringe upon "To Tell the Truth." Such an opinion would no doubt be useful to plaintiff in negotiating for lower insurance premiums. Yet to grant plaintiff its requested relief on the basis of its assertions during (and after) its motion argument would be virtually tantamount to giving plaintiff the declaratory judgment it would be entitled to receive only if it prevailed upon a full trial on the merits.

Facts potentially critical to a determination of the contested issues have not been fully probed. The defendant contends that

---

**10.** Affidavit of Roger Sherman, June 30, 1986, at ¶¶ 6–7.

**11.** An alternative explanation for the half payment may simply be that the full payment is not yet due. Plaintiff's contract states that ABC will pay the production costs for the pilot according to a schedule that was not supplied to the Court.

**12.** Plaintiff has supplied copies of its errors and omissions policies for the television series "We Love the Dating Game" (a program previously insured under the name "The Dating Game") and "The New Newlywed Game," also previous-

ly insured. Plaintiff, however, has made no representation to the Court that the premiums charged for these policies are comparable to what would be charged for a policy on the new program, "Bamboozle," if defendant had not sent its letter.

**13.** Affidavit of Roger Sherman, June 30, 1986, at ¶ 4.

**14.** Plaintiff quotes *Beacon Looms, Inc. v. S. Lichtenberg & Co., Inc.,* 552 F.Supp. 1305, 1314 (S.D.N.Y.1982).

one of its former employees who played a significant role in the production of "To Tell the Truth" has also played a significant role in the production of "Bamboozle," with the implication that his familiarity with "To Tell the Truth" led to the use of alleged infringing material in "Bamboozle." Yet defendant has to date conducted no discovery of plaintiff and its agents, including the former Goodson-Todman employee. Such discovery might well disclose facts that bear on the plaintiff's likelihood of success on the merits of the basic controversy.

The first essential for the grant of a preliminary injunction is proof of irreparable harm. As the Second Circuit has repeatedly held, a preliminary injunction is an "extraordinary" remedy, to be granted only on a "clear showing" of such harm.[15] Because plaintiff has failed to offer persuasive evidence linking defendant's threat of litigation to any irreparable injury, plaintiff's motion for a preliminary injunction is denied. The contested issues should be decided upon a trial on the merits and if the parties proceed with due diligence the case may readily proceed to trial.

So ordered.

---

**15.** *Diversified Mortgage Investors v. U.S. Life Title Ins. Co.,* 544 F.2d 571, 576 (2d Cir.1976); *Schneider v. Whaley,* 541 F.2d 916, 921 (2d Cir. 1976); *see also Medical Soc'y of State of New* *York v. Toia,* 560 F.2d 535, 538 (2d Cir.1977) (stating that interim injunctive relief is "an extraordinary and drastic remedy which should not be routinely granted").