ARP FILMS, INC., Plaintiff,

v.

MARVEL ENTERTAINMENT GROUP,
a Division of CADENCE
INDUSTRIES CORP., Defendant.

No. 86 Civ. 6759 (EW).

United States District Court,
S.D. New York.

Oct. 20, 1986.

**9.** *See Bense v. International Battery System,* 683 F.2d 718, 721 (2d Cir.1982).

Gregory J. Battersby, Charles W. Grimes, David Otis Fuller, Jr., Grimes & Battersby, Stamford, Conn., for plaintiff; Lee Ledford, Thomas E. Harrison, Jr., of counsel.

Charles R. Brainard, Stuart J. Sinder, Jonathan D. Reichman, Kenyon & Kenyon, New York City, for defendant.

EDWARD WEINFELD, District Judge.

Arp Films, Inc. is a Tennessee Corporation (Arp) that claims the right to distribute films featuring "superhero" characters owned by Cadence Industries through Cadence's division, Marvel Entertainment Group. Arp commenced this suit against Cadence for damages and injunctive relief, alleging that Cadence has breached a contract with Arp by granting exclusive distribution rights for certain video cassettes to a third party and by unreasonably refusing to give to Arp and/or Claude S. Hill, Arp's sole shareholder, the permission they were required by contract to obtain before selling shares of Arp stock to third parties.

Three motions are before the Court. Arp moves (1) for a preliminary injunction against Cadence's alleged unreasonable withholding of the approval that Arp must, by contract, obtain prior to selling stock in a public offering; and (2) for consolidation of Arp's suit with a suit commenced by Cadence against Arp for, among other things, copyright infringement and breach of contract. Cadence moves to dismiss Arp's complaint pursuant to Fed.R.Civ.P. 12(b)(6) on the grounds that: (1) Arp has not been in good standing in its state of incorporation and is thus prohibited from suing in New York by New York Business Corporation Law §§ 1305, 1312; and (2) Arp is not a party to the contract upon which it bases its claim.

The Preliminary Injunction Motion

Of immediate concern to Arp is its motion for a preliminary injunction. Under the well-known rule in our circuit, a preliminary injunction should be granted "where the moving party demonstrates (1) irreparable harm and (2) either (a) a probability of success on the merits or (b) sufficiently serious questions going to the merits to make them fair grounds for litigation and a balance of hardships tipping decidedly in the moving party's favor." [1]

A threshold question is Cadence's contention that all of Arp's claims must fail because Arp is not a party to the contract upon which those claims are predicated. There is no doubt that in 1976 Cadence entered into a contract with a corporation called Arp Films, Inc., and there is equally no doubt that the Arp Films, Inc. that was party to the contract was a Delaware corporation. The Arp Films that is the plaintiff in this action, however, is a Tennessee corporation. The Delaware corporation was declared void for non-payment of franchise taxes in March 1979. In 1978 a new corporation called Arp Films was incorporated in Tennessee. The defendant contends it never had any dealings with the Tennessee corporation or knew of its existence until it recently came to light during contact between the parties concerning various provisions in the contract.

In response to Cadence's argument, the Tennessee corporation contends that defendant was specifically advised of Arp's change from a Delaware to a Tennessee corporation. It also alleges that defendant knew of the Tennessee incorporation since it audited the books and financial reports of the plaintiff in December 1982 and since an officer of plaintiff testified to the incorporation in Tennessee during a deposition conducted by defendant's counsel in another legal matter. In sum, plaintiff claims

1. *Church of Scientology Int'l v. The Elmira Mission of the Church of Scientology*, 794 F.2d 38, 41 (2d Cir.1986); *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985); *Barris-Fraser Enters. v. Goodson-Todman Enters., Ltd*, 638 F.Supp. 292, 293 (S.D.N.Y.1986).

that defendant is estopped from challenging its status as a party to the contract.

■ The defendant denies it was ever told of the dissolution of the Delaware corporation, the incorporation of the Tennessee corporation, or that it ever consented to the assignment of the contract. It denies the allegation that knowledge came to it by reason of the inspection of plaintiff's books or the deposition which related to issues far removed from that of the identity of the corporation. Whatever the merits of the parties' respective positions, it is evident that a substantial issue exists as to a material fact—whether the plaintiff is a party to the agreement upon which it seeks relief. While the presence of this factual issue is sufficient to require this Court to deny defendant's motion to dismiss, it also casts sufficient doubt upon the plaintiff's right to the claims as to require denial of the motion for a preliminary injunction.

But even were the foregoing issue to be resolved in plaintiff's favor at this stage of the litigation, additional considerations would require denial of the preliminary injunction. Arp claims it is likely to succeed on the merits after a trial where the sole issue is whether Cadence was "reasonable" in withholding approval of Arp's plans to go public. In support of this argument, Arp submits affidavits from several persons who state that the requirements Cadence seeks to impose upon Arp would make it impossible for Arp's public offering to succeed.

This argument, however, fails to deal with Cadence's response that the contract requiring Cadence's approval for Arp to sell stock did not contemplate a public offering. As Cadence explains, the contract was born in the aftermath of litigation between Cadence and its previous film distributor, an experience that led Cadence to insist upon close control over its new distributor. Cadence thus argues that the contract was "essentially a stockholder's agreement, with all of the shareholders of Arp—at that time, only Claude Hill—being

named parties to the Contract and being personally bound by its terms." [2]

Cadence contends that the conditions to consent which it has required are either directly mandated by express terms of the contract or are otherwise reasonable in light of the current litigation between the parties. Among those conditions are that (1) each new shareholder be acceptable to Marvel; (2) each new shareholder represent that he or she has read the contract that currently binds Arp and agrees to be bound by it; (3) all officers and over–5% shareholders submit to the jurisdiction of this Court and agree to provide all documents relevant to distribution; (4) there be no retransfer of stock without Cadence's consent; (5) each shareholder acknowledge having read the letter containing these conditions and agrees to be bound by it; (6) Cadence have an opportunity to review Arp's preliminary registration statement; and (7) Cadence's consent not be deemed a waiver of any contentions in the pending lawsuits.

■ In particular, Cadence argues that conditions 3 and 6 expressly apply to Arp under the terms of the contract; conditions 1 and 2 are set forth in the contract as applying to Amerex, a corporation set up by Arp, but now apply to Arp since it is performing all of the functions of Amerex, a dormant company; and conditions 4, 5, and 7, as well as the other conditions, are reasonable in light of the intent of the contract and the litigation between Arp and Cadence. The terms of the contract and Cadence's reasons for including them in the contract support Cadence's contention that the contract did not contemplate a public offering. Arp has thus failed to demonstrate likelihood of success on the merits of its claim that Cadence's conditions are unreasonable.

■ Finally, even if it be found that Arp has raised serious questions going to the merits, Arp has not demonstrated that the balance of hardships tips sharply in its favor. Whether Arp's public offering

2. Defendant's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction 7.

would succeed if permitted to go forward is itself an open question, and Arp has not demonstrated that the current timing of its public offering or of its expansion plans is critical to its success. The mere assertion in Arp's brief that "the loss of competitive advantage and planned growth can place a company in a commercially life threatening situation" is no substitute for proof. The actual effect of postponing Arp's public offering and expansion plans is in doubt.

If Arp is granted its preliminary relief, however, Cadence will lose the benefit it sought to gain by its contract. It will lose control over who may purchase stock in its distributor, and once that stock is sold to good-faith purchasers, there is no way to undo the sale to the third parties. Given the questionable nature of the harm claimed by Arp, the balance of hardships cannot be said to tip sharply in Arp's favor.

### Cadence's Motion to Dismiss

█ One aspect of Cadence's motion to dismiss is discussed and disposed of above. The foregoing disposition makes it unnecessary to consider defendant's further argument that under paragraph 5(c) of the Memorandum Agreement "the license shall terminate immediately upon bankruptcy, insolvency, etc." of Arp. Defendant also moves for dismissal on the ground that Arp was not in good standing in its state of incorporation at the time that it filed its complaint and is thus prohibited from suing in New York by New York Business Corporation Law §§ 1305, 1312.

The Tennessee corporation in May 1984 applied for and received authority to do business in New York State. Attached to that application was a certificate by the Secretary of State of Tennessee that the Tennessee corporation was in good standing and had paid all its taxes. In December 1985 this certificate was revoked in Tennessee for failure to file annual reports and to pay taxes to the state, but the plaintiff herein now asserts it has paid the

taxes due and is in good standing in both New York State and Tennessee. Defendant has not denied that plaintiff is now in good standing. The New York courts have consistently held that lack of good standing is not a bar to commencing suit, is not a ground for dismissal, and that a plaintiff may continue an action as soon as it regains good standing.[3] Defendant's argument thus provides no basis on which to dismiss plaintiff's complaint.

### Arp's Motion to Consolidate

The motion to consolidate the instant case with *Cadence Industries Corp. v. Arp Films, Inc.*, 86 Civ. 6751 (EW) is granted without opposition. The Court reserves decision, however, on the issue of which party shall be identified as the plaintiff and which as the defendant.

### Conclusion

Cadence's motion to dismiss and Arp's motion for a preliminary injunction are denied. The motion to consolidate is granted.

So ordered.

**3.** *Tri-Terminal Corp. v. CITC Indus., Inc.*, 432 N.Y.S.2d 184, 78 A.D.2d 609 (1st Dept.1980); *Hot Roll Mfg. Co. v. Cerone Equipment Co.*, 329 N.Y.S.2d 466, 38 A.D.2d 339 (3d Dept.1972); *Paper Mfrs. Co. v. Ris Paper Co.*, 381 N.Y.S.2d 959, 86 Misc.2d 95 (Civ.Ct.N.Y.Co.1976); *Hooton Chocolate Co. v. Star Chocolate Novelties, Inc.*, 311 N.Y.S.2d 698, 63 Misc.2d 482 (Sup.Ct.Columbia Co.1970).