**HOUSE OF HATTEN, INC., Plaintiff,**

v.

**BABY TOGS, INC., Defendant.**

**No. 87 Civ. 223 (MJL).**

United States District Court,
S.D. New York.

Aug. 24, 1987.

252

Amster, Rothstein & Ebenstein, by Philip Gottfried, Lisa Cristal, New York City, for plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison, by Allan Blumstein, David James, Clyde Allison, Gottlieb, Rockman & Reisman, New York City, for defendant; Barry Cooper, of counsel.

## MEMORANDUM OPINION AND ORDER

LOWE, District Judge.

Plaintiff, House of Hatten Inc. ("House of Hatten") moves this Court for a preliminary injunction enjoining the distribution and sale of claimed infringements of its designs of baby quilts. Plaintiff alleges that its products are high-quality, hand-sewn quilts each of which includes thereon fanciful representations of various children's scenes. The quilts are designed for an infant's crib or playpen. Some of plaintiff's quilts are manufactured by a Philippine corporation, wholly owned by plaintiff's president and his wife; others are manufactured in China from kits prepared in the Philippine factory. All of the Philip-

pine and Chinese quilts are shipped to plaintiff's warehouse in Texas and from there they are distributed to plaintiff's retailers in the United States through commission sales representatives.

Defendant, Baby Togs, Inc. ("Baby Togs") alleges it purchased copies of plaintiff's quilts in retail stores in the New York area, in Puerto Rico and directly from House of Hatten. Since none of these purchases had copyright notice affixed, defendant, a retailer of infants and toddlers clothing, ordered, from its Chinese manufacturer, line-for-line copies of plaintiff's quilts. When advised of possible copyright claims, defendant directed its manufacturer to make redesigned quilts with the same theme.

In August 1986 after being informed by its New York representative that defendant was offering for sale in its showrooms quilts of the same design as plaintiff's, plaintiff undertook various activities to secure copyright registration for its quilts and brought this injunction action in January 1987. This Court held two hearings on plaintiff's injunction motion, and the following findings of fact and conclusions of law are made pursuant to Fed.R.Civ.P. 65.

*Findings of Fact*

1. On October 3, 1983 plaintiff published the design "Baby Train" in pastel colors.[1] All of these quilts were sold without copyright notice affixed.

2. In September 1984 plaintiff published quilt designs entitled "May Pole", "Merry-Go-Round", "Ferris Wheel" and "Carousel II". These quilts were first distributed to the public in early 1985 without copyright notice affixed. Plaintiff calls these quilts its 1985 line.

3. The designs, "Baby Train" in primary colors, and "Animal Trolley" were first published in May 1985 and distributed to the public in 1986. Plaintiff calls these quilts its 1986 line.

4. In December 1985 plaintiff submitted to the copyright office copies of its designs "Baby Train" in primary colors and "Animal Trolley". The copyright office informed plaintiff by letter dated February 3, 1986 that its application was defective because the submitted samples did not have copyright notice affixed.[2] The statute is very specific as to its requirement for copyright notice.[3] Plaintiff claims that it has no file on the December 1985 registration,[4] thus there was no evidence produced at the hearing as to the date the registration was completed and became part of the public record.

5. In January 1986, defendant's vice-president, Jack Sitt, purchased two of plaintiff's quilts while vacationing in Puerto Rico. Upon his return to New York he instructed his employee, Janice Cullen, to purchase additional House of Hatten quilts. Ms. Cullen, in February and April 1986,

---

**1.** *See* Corrected Registration for Baby Train quilt attached as an Exhibit to Plaintiff's Proposed Findings of Fact and Conclusions of Law. Shoemaker Declaration, ¶¶ 3 and 4.

**2.** The February 3 Letter from the copyright office informed House of Hatten that, if published copies of its quilts did not have a copyright notice, it was required to take steps to cure such omission:

> If the published copies did not bear a notice, please let us know, and we will register the claim using the identifying material already submitted. In this case, we must caution you that while the omission of the notice does not invalidate the copyright, the copyright law requires that a reasonable effort be made to add the proper notice to all copies that are distributed to the public in the United States after the omission has been discovered.

Blumenstein Affidavit in Opposition to Motion, Exhibit 15.

**3.** For published works, 17, U.S.C. § 401(a) provides that a copyright notice in a specified form "shall be placed on all publicly distributed copies from which the work can be visually perceived...". Subdivision (b) provides that the required form of the notice for copies consists of three elements: (1) the symbol "C", or the word "Copyright," or the abbreviation "Copr."; (2) the year of the first publication; and (3) the name of the owner of copyright. Subdivsion (c) provides that the notice is to be "affixed to the copies in such manner and location as to give reasonable notice of the claim of copyright."

**4.** This Court finds from the credible evidence produced at the hearings that plaintiff did receive the February 3, 1986 Letter and is charged with knowledge of its contents. *See* Blumstein Affidavit in Opposition to Motion, Exhibit 15.

purchased House of Hatten quilts from stores in New York and a store in Puerto Rico. In addition the store in Puerto Rico, at her request, placed an order directly with House of Hatten for the quilts Merry Go-Round and May Pole. None of the Quilts purchased in January, February and April 1986 had a copyright notice attached.[5]

6. In March and April 1986 defendant contracted with its supplier in China for the manufacture of 10,020 dozen copies of plaintiff's quilts for a total contract price of approximately $600,000.[6]

7. In March 1986, one month after the February 3, 1986 Letter from the copyright office rejecting the attempted registration of plaintiff's 1986 line, plaintiff issued written instructions to its Philippine manufacturer to replace labels on its 1986 line with House of Hatten labels showing a copyright symbol.[7]

8. In late June 1986, defendant received samples of the quilts from its supplier in China and put them on sale in its showrooms.

9. Defendant was informed in August 1986 that absence of copyright notice did not mean that no copyright could be claimed. Defendant caused an immediate search to be made of the public record at the copyright office. No record was found. The 1985 quilts were not registered until October 1986. Plaintiff has failed to prove the date registration was accepted for the 1986 quilts.[8]

10. On August 21, 1986 defendant telexed its supplier in China to cease production of its April 1986 order. At the time production was stopped, 550 dozen quilts had been manufactured at a cost to defendant of $121,000. Defendant at the same time stopped exhibiting samples of the quilts in its showrooms.[9]

11. In August 1986 defendants designer, Elizabeth Burke, was directed to create new designs for the baby quilts. Because a large amount of material had already been cut or stamped for the old designs, Ms. Burke created designs which utilized as much as possible the already pre-cut fabric.[10]

12. In August 1986 plaintiff's New York representative informed plaintiff that copies of plaintiff's quilts were offered for sale at defendant's New York showrooms.[11]

13. In September 1986 Charlotte Wyman, warehouse manager of plaintiff, first received a memorandum that all merchandise in the warehouse was to be examined for copyright labels. Wyman testified that between September 1986 and January 1987 no quilts were shipped from the warehouse.[12]

14. On October 3, 1986 plaintiff sent a letter to the copyright office submitting registrations for its four 1985 line quilts.[13] The October 3, 1986 letter stated that plaintiff believed defendant was infringing its designs and that plaintiff intended to sue defendant for copyright infringement in January 1987.[14]

5. Jack Sitt Affidavit; Janice Cullen Affidavit; Transcript of Hearing of February 20, 1987 at 67.

6. Joseph Sitt Affidavit ¶ 5.

7. Plaintiff's Memorandum of February 17, 1987, Exhibit 4.

8. Although the record discloses that the copyright office rejected the attempted December 1985 registration in its February 3, 1986 letter; plaintiff was unable to offer any evidence of the date when the registration was completed and certificates were actually filed. Shoemaker Deposition at 54. This Court therefore finds from the credible evidence that defendant's failure to find any copyright registration in its August 1986 search was not due to negligence.

9. Joseph Sitt Affidavit, ¶¶ 9, 11, 12.

10. Burke Affidavit dated February 17, 1987.

11. Shoemaker Deposition, at 32–33.

12. Wyman Deposition, at 13.

13. Shoemaker Deposition at 32–33.

14. The October 3, 1986 Letter read in part:
   Recently a company by the name of Baby Togs, Inc. / 450 W. 33RD St. / NY, NY 1001 has been displaying in their showrooms in NY, NY and perhaps other cities in the USA, our quilts or copies of our quilt designs as being their own. These sample quilts are exact duplications of quilt designs which have been in our line since 1984.

15. In November 1986 plaintiff notified its overseas suppliers to put copyright notices on the four quilts of its 1985 line.[15]

16. In December 1986 plaintiff ordered stick-on copyright labels. These labels were to be affixed to all quilts, including those without notices, found in plaintiff's warehouse, and others that did not bear notice that were previously distributed to retailers by plaintiff's sales representatives. These stick-on labels were not delivered until January, 1987.[16]

17. Plaintiff made no effort to contact its retailers to affix copyright labels because "the expense would not be worth the trouble."[17] Plaintiff offered no evidence as to what the expense would be.

18. The first notice defendant received of plaintiff's infringement claims was on January 16, 1987 when defendant was served with a copy of the complaint and notice of motion for a preliminary injunction.[18]

19. All of defendant's alleged infringing activities took place between August 1986, when plaintiff first had notice of its claim, and January 16, 1987 when plaintiff first asserted its claim. At no time between August 1986 and January 1987 did plaintiff notify defendant of its infringement claims.[19]

20. Defendant expended over $700,000 in production of its quilts after plaintiff knew of defendant's allegedly infringing actions and before defendant knew of plaintiff's copyright claim.[20]

### Conclusion of Law

■ The standard in this Circuit for issuance of a preliminary injunction is a showing of irreparable harm and either the probability of success on the merits or serious questions going to the merits making them a fair ground for litigation and the balance of hardships tipping decidedly toward the movant. *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985).

■ "A *prima facie* case of copyright infringement consists of proof that the plaintiff owns a valid copyright and the defendant has engaged in unauthorized copying." *Hasbro Bradley, Inc.*, 780 F.2d at 192. Publication of a work without copyright notice affixed places the work into the public domain unless the absence of such notice is excused under 17 U.S.C. § 405(a) (1976).[21]

■ Plaintiff argues that its copyrights are valid because notice was omitted in violation of plaintiff's express written requirement to its Philippine manufacturer

---

We intend to prosecute the infringing party, Baby Togs, Inc., in NY, NY. The prospective date of litigation is January 1987. The damages to our company's sales would be extensive, over $70,000 in 1987 alone, if Baby Togs, Inc. would be allowed to sell these copied quilt designs.
Blumstein Affidavit in Opposition to Motion, Exhibit 7.

**15.** Plaintiff's Memorandum of February 17, 1987, Exhibit 8; Shoemaker Deposition at 38–41, 45.

**16.** Wisenant Deposition at 5–9; Blumstein Affidavit in Opposition to Motion, Exhibit 13.

**17.** Shoemaker Deposition at 74–89.

**18.** Joseph Sitt Affidavit ¶ 14.

**19.** Shoemaker Deposition at 63–64; Joseph Sitt Affidavit ¶ 14:
The first time we received any Notice of House of Hatten's alleged copyrights was when we were served with the complaint in this case on January 16, 1987. By that time, our supplier in China had completely finished the production of our redesigned quilts.

**20.** Joseph Sitt Affidavit ¶¶ 5 and 15.

**21.** Subsection 405(a), states, *inter alia:* "The omission ... copyright notice ... from copies ... publicly distributed by authority of the copyright owner does not invalidate the copyright in a work if—
(1) the notice has been omitted from no more than a relatively small number of copies ... distributed to the public; or
(2) registration for the work has been made before or is made within five years after the publication without notice, and a reasonable effort is made to add notice to all copies ... that are distributed to the public in the United States after the omission has been discovered; or
(3) the notice has been omitted in violation of an express requirement in writing that, as a condition of the copyright owner's authorization of the public distribution of copies ..., they bear the prescribed notice."

that notice be affixed. Plaintiff's argument, which relies on 405(a)(3), is inappropriate. This provision is directed toward the violation of a written licensing agreement. A plaintiff who has notified its licensee, in writing that all articles sold pursuant to the license must bear copyright notice, should not be deprived of its copyright because the licensee intentionally or negligently failed to affix such notice.

Plaintiff's Philippine manufacturer is not comparable to a licensee. The manufacturer was not authorized to publicly distribute the quilts, but rather sent them to plaintiff's Texas warehouse for distribution. Furthermore, the Philippine manufacturer was not an independent entity, such as a licensee, but was a factory wholly owned by plaintiff's president and its vice-president. This Court finds that in the above circumstances 405(a)(3) has no application.

Plaintiff next relies on subdivision (1) of 405(a) which excuses publication without notice when notice has been omitted from a relatively small number of copies. Professor Nimmer has commented that the term "relatively small number" must mean relative to the total number of copies distributed. 2 M. Nimmer, *Nimmer On Copyright* § 7.13(A) (1963).

In examining the evidence produced, it is clear that the quilt design "Baby Train" does not meet this standard. All of the 1983 "Baby Train" quilts were distributed without copyright notice. In addition plaintiff has offered no evidence concerning how many "Baby Train" designs in primary colors were sold without notice affixed, prior to the September 1986 warehouse check by Ms. Wyman.

As to the 1985 quilts, the evidence is that they were distributed to the public in early 1985 and copyright notices were first affixed in November 1986. Since plaintiff has failed to produce sales figures for the period 1985–1986, this Court cannot make a judgment whether the number of quilts distributed without notice is relatively small compared to the number of copies distributed with notice.

The same deficiency in the Record is found as to the 1986 quilt "Animal Trol-

ley". Plaintiff has offered no evidence of the effective date of registration nor has it offered any evidence of the number of quilts publicly distributed without copyright notice.

While it is clear in the present case that a substantial number of copies have been published without notice, plaintiff has not come forward in discovery with the number sold in relation to the total sold with notice. Since the plaintiff has not borne its burden of persuasion under § 405(a)(1), recourse must be had to 405(a)(2). *Shapiro & Son Bedspread Corp. v. Royal Mills Assoc.,* 764 F.2d 69, 73 (2d Cir.1985).

*405(a)(2)*

■■■■ This section provides that copyright in a work may be preserved provided the work is registered within five years after first publication without notice—a fact not in dispute herein—and a reasonable effort is made to add notice after the omission has been discovered. Notice need not be added to copies distributed to the public prior to the discovery of the omission. *Nimmer,* § 7.13(B). However, if copies are in the hands of the copyright owner or retail dealers after discovery, notice must be affixed. *Shapiro & Son Bedspread Corp.,* 764 F.2d at 74. The unexcused omission of notice will invalidate the copyright even as against those who have not been misled by such omission, *Nimmer,* § 7.14(A). The issue before this Court is therefore whether plaintiff expended reasonable efforts to affix notice after the omission was discovered.

■■■■ Although inadvertent or intentional omission of notice may be cured under section 405(a)(2) such cure must be prompt, *Gemveto Jewelry Co., Inc. v. Jeff Cooper, Inc.,* 568 F.Supp. 319, 331 (S.D.N.Y.1983), *vacated and remanded on other grounds,* 800 F.2d 256 (Fed.Cir.1986) and reasonable in light of the circumstances of each case, *Shapiro & Son Bedspread Corp.,* 764 F.2d at 75. The question of promptness addresses the issue of irreparable harm, while the issue of reasonable cure addresses the question of good faith intention to

supply notice of claimed copyright to innocent infringers.[22]

■ The Second Circuit has not passed upon the question of how the date of discovery of the omission of notice is to be determined when the omission of notice is intentional, *Hasbro Bradley, Inc.*, 780 F.2d at 195–96. The facts in this case disclose that the February 3, 1986 Letter from the copyright office informed plaintiff that under the law it could affix copyright notice to designs prior to their registration. This Court finds February 3, 1986 to be the date of discovery of the omission beyond which the failure to affix notice became intentional. Therefore from the date plaintiff received the February 3, 1986 letter, it could no longer rely upon its claimed ignorance of the law. Promptness in affixing copyright notice to all of plaintiff's quilts is therefore judged from February 3, 1986. This Court has found that plaintiff did not notify its employees to affix copyright notice to its 1985 quilts until either November 1986, when it notified its overseas supplier to affix such notice, or January 1987 when the stick on labels were delivered. As to the 1986 quilts, plaintiffs first notified its warehouse that copyright notice must be affixed to these quilts in March 1986. However notice to manufacturers or its warehouse is not sufficient compliance with § 405(a)(2)'s mandate that plaintiff "add

notice to all copies ... that are distributed to the public in the United States after the omission has been discovered." Indeed, in interpreting this statute, the leading authority on copyright law has stated:

Suppose, however, that prior to such discovery [of the omission of copyright notice], copies ... are distributed to retail dealers, but the discovery occurs before such copies ... have been distributed by such dealers to the consumer-public. Does the copyright owner have the duty to make a reasonable effort to add the notice to such copies ... in the possession of the retail dealers? *It would appear that there is such a requirement* in that such copies ... will still be "distributed *to the public* ... after the omission has been discovered".

*Nimmer*, § 7.13(B)(2), (footnotes omitted) (emphasis supplied).

Plaintiff asserts that it has 12,000 retail outlets[23] which sell its quilts to the ultimate consumer. Plaintiff however has failed to furnish any sales figures during discovery as to the number of quilts distributed either prior to February 3, 1986 or subsequent thereto without copyright notice attached.[24] Clearly such figures are relevant to a determination of whether Plaintiff's January 27, 1987 Letter to its sales representatives[25] constituted reason-

---

**22.** Section 405(b):

(b) *Effect of Omission on Innocent Infringers.* Any person who innocently infringes a copyright, in reliance upon an authorized copy from which the copyright notice has been omitted incurs no liability for actual or statutory damages under section 504 for any infringing acts committed before receiving actual notice that registration for the work has been made under section 408, if such person proves that he or she was misled by the omission of notice. In a suit for infringement in such a case the court may allow or disallow recovery of any of the infringer's profits attributable to the infringement, and may enjoin the continuation of the infringing undertaking or may require, as a condition [for] permitting the continuation of the infringing undertaking, that the infringer pay the copyright owner a reasonable license fee in an amount and on terms fixed by the court.

**23.** Shoemaker Deposition at 89.

**24.** Transcript of Hearing February 20, 1987 at 25–26.

**25.** The January 27, 1987 Letter read in part:

At the present time we are involved in a copyright law suit with another company who we believe is copying some of our quilt designs. In order to protect our mutual interests we are asking that extra steps to be taken to insure that every customer of House of Hatten's knows that all our designs are copyrighted. The first step is to ascertain that all House of Hatten merchandise in your showroom is marked with copyright labels.

Enclosed please find House of Hatten, Inc. self adhesive copyright labels. Please stick these labels on all House of Hatten items in your showroom which currently do not have a copyright mark on the fabric label. In the next few weeks we will be sending you approximately 1000 labels for you to distribute to your customers for any items which may have been sold without the copyright notice atached.

able cure. This is especially so since this effort was not undertaken until after the instant litigation was instituted. Plaintiff admits that it has made no direct contact with its retailer customers to either encourage them to affix copyright labels or to monitor the efforts of its sales representatives.[26] Plaintiff's proffered excuse for this program deficiency is that "the expense would not be worth the trouble.[27]

Since the question of what constitutes reasonable effort depends on the circumstances of each case, *Shapiro & Son Bedspread Corp.*, 764 F.2d at 75, this Court finds that for purposes of a preliminary injunction, plaintiff has not sustained its burden of proof that it has made a reasonable effort to add proper notice to all copies in the possession of its retailers (but not yet in the hands of consumers) nor has it factually shown the impracticability of such efforts. *Id.* at 74; *Beacon Looms, Inc., v. S. Lichtenberg, & Co.,* 552 F.Supp. 1305, 1313 (S.D.N.Y.1982); *Videotronics, Inc. v. Bend Electronics,* 586 F.Supp. 478, 483 (D.Nev.1984). The Court further finds that plaintiff has not demonstrated the urgent need for action to protect is rights so as to justify the extraordinary relief of a preliminary injunction. *Citibank N.A. v. City Trust,* 756 F.2d 273, 276 (2d Cir.1985). ("Delay in seeking a preliminary injunction may render the presumption of irreparable harm inoperative.").

This record demonstrates that plaintiff was informed by the copyright office February 3, 1986 that it was entitled to affix copyright notice to all of its quilts, even though registration had neither been sought nor effected. In August 1986 plaintiff was informed of this defendant's alleged infringment activities. The October 3, 1986 Letter to the copyright office shows that as of that date plaintiff was aware of its right to bring this infringement action, however, the Letter demonstrates plaintiff's lack of urgency in enforcing its rights in that it stated "[t]he prospective date of litigation is January 1987." This Court finds that plaintiff waited over five months to assert its claim. We have found no case, nor have we been cited to any, in which such a lapse of time has resulted in the grant of preliminary relief. This case is one in which excusing the delay would be particularly inappropriate because the defendant during that period was not notified as to plaintiff's copyright claims and acted to its detriment in ordering and completing manufacture of the alleged infringing quilts.

In order to avail itself under § 405(b) defendant must prove it is an innocent infringer. Under § 405(a) plaintiff has the burden of proving that the absence of notice is excused under one of the three subsections of the statute. The record developed in these proceedings shows *prima facie* that defendant is an innocent infringer under § 405(b). On the other hand plaintiff failed to prove for purposes of the preliminary injunction that its omissions of copyright were excused under any of the subdivisions of § 405(a). These contentions raised by the parties must await a trial because they cannot be resolved on this record.

Plaintiff's lack of diligence in seeking judicial relief upon learning of defendant's activities mitigates against a finding of irreparable harm. *Citibank, N.A.,* 756 F.2d at 276. The balance of hardship tips decidedly in favor of the defendant which has an investment of over $700,000 in the alleged infringing quilts which would be lost if a preliminary injunction would be granted at this stage of the proceedings.

Plaintiff's motion for a preliminary injunction is in all respects denied.

It Is So Ordered.

---

**26.** Shoemaker Deposition at 73–74.

**27.** *Id.* at 74 and 89.