CHARLES GARNIER, PARIS

v.

ANDIN INTERNATIONAL, INC.

Civ. A. No. 92–0561 P.

United States District Court,
D. Rhode Island.

Feb. 17, 1994.

John D. Deacon, Flanders & Medeiros, Providence, RI, for plaintiff.

William R. Grimm, Christopher M. Neronha, Hinckley, Allen & Snyder, Providence, RI, Julius Rabinowitz, Kuhn & Muller, New York City, for defendant.

### OPINION AND ORDER

PETTINE, Senior District Judge.

This copyright infringement controversy is before me on the plaintiff's motion for pre-liminary injunction against the defendant, seeking to stop it from selling the alleged infringed product—a gold "Swirled Hoop Earring."

Two issues must be resolved: a) did the plaintiff forfeit its copyright by not adding a copyright notice to copies of its earring; b) if the copyright was not forfeited, is the defendant's affirmative defense of innocent infringement valid?

#### I.

The plaintiff, Charles Garnier, Paris ("Garnier"), is a Paris, France based corporation which manufactures 18 karat gold jewelry; it distributes its products to retailers and department stores in sixty different countries throughout the world, including the United States.

The merchandise imported into the United States must "go through a French hallmarking. The French hallmarking guarantees that the manufacturer has his manufacturing mark on the piece and a quality stamp indicating the fineness of the gold; in this case .750, which would indicate 18 karat." There are about five hundred different styles in the Garnier line; of these, only thirty to forty have been copyrighted.

Garnier introduces a new line of products once or twice a year. Prior to introduction, the executives of the company determine which pieces will be immediately subject to copyright protection and which will be sold without any copyright action, deferring a final decision until the extent of sales such uncopyrighted pieces will generate can be determined.

The swirled hoop earring, created in 1987, was first offered for sale, without copyright protection, in April of 1988, and has been on the market ever since. In July of 1992, the plaintiff learned that the defendant, Andin International, Inc. ("Andin"), a jewelry manufacturer doing business throughout the United States, including Rhode Island, was manufacturing and selling an almost identical earring. Immediately thereafter, on July 28, 1992, the plaintiff, for the first time, filed a copyright registration and started to affix to the swirled hoop earring a notice of copy-

right. Prior to such registration, unnoticed pieces had been distributed to approximately 150 retailers. On October 26, 1992, the plaintiff mailed letters, quoted *infra*, to about fifty of these retailers advising them of the copyright. It is important to note what the letter did not say: it did not indicate there was an omission of notice on those items in the retailers' inventory; it did not direct the retailers to put a copyright notice on the unnoticed items in their possession; and it did not have any discussion regarding the replacement of their inventories, which the defendant claims did not exist. However, the record is unclear as to whether or not the plaintiff's customers actually had any inventories of the swirled hoop earring as of the October 26, 1992 mailing. The only categorical assertion comes from the plaintiff; its vice president testified that as of August 1992 none existed. Furthermore, plaintiff attempts to mitigate the inventory issue by pointing out that, though it is true it did not file a copyright registration until July of 1992, as of 1990 and continuously thereafter, all swirled hoop earrings it sold were accompanied by a story card reading the work was "a Charles Garnier of Paris ... original copyrighted design" and "a genuine copyrighted original." In other words, prior to learning of the infringement, plaintiff claims to have been in compliance with the copyright laws. However, no evidence was introduced that retailers, in fact, distributed the card to each and every customer—there were no instructions to the retailers that the card was to be physically attached to the unnoticed earrings.

There is no dispute that the plaintiff did not seek copyright protection, except as stated above, even though its practice is to make a special effort to protect such "signature pieces" as the Swirled Hoop Earring. It contends the omission of copyright notice was an oversight and not the result of any deliberate decision. On August 27, 1992, after registering the copyright, it issued notice to the defendant of registration of the copyright and demanded it terminate the infringement. The present suit was filed on October 20, 1992.

1. This entire subject is discussed in Kenneth D. Hurwitz, *Omission of Copyright Notice under Sec-*

## II.

Under copyright law, the need to add a copyright notice to copies of articles for protection against infringers has been a vexing one. Originally, the statutes were quite stringent by requiring that the creative work bear formal notice for copyright protection.[1] However, starting with the 1909 Act, a liberalized policy emerged and steadily developed thereafter, as I will attempt to set forth in abbreviated form. Section 21 of this Act gave a degree of protection when there was an omission of notice by decreeing, "the omission by accident or mistake of the prescribed notice from a particular copy or copies [would] not invalidate the copyright." 17 U.S.C. § 21 (repealed 1976). This rather broad ruling was refined long ago by at least one trial court, *Sieff v. Continental Auto Supply*, 39 F.Supp. 683 (D.Minn.1941). The *Sieff* court held a claimant was not protected if the omission resulted from negligence or oversight. In 1976, 17 U.S.C. § 21 was repealed. Section 405 of the 1976 Copyright Act, sometimes referred to as a "cure" provision, gave a statutory protection for at least five years, provided the work was registered at the Copyright Office before or within five years of publication and "reasonable efforts" were made to affix notice on copies distributed to the public "after the omission has been discovered." However, the foregoing is not as simplistic as it sounds, because of the varying interpretations that may be given to the term "reasonable effort," and, as will be discussed *infra*, the effect and application a subsequent amendment to the copyright law, the Berne Amendment, had on section 405 provision.

One of the initial questions that arose was whether a distinction had to be drawn between deliberate and unintentional omissions; a distinction of importance here, since the plaintiff seeks solace in claiming it acted unintentionally, as already pointed out. *Beacon Looms, Inc. v. S. Lichtenberg & Co.*, 552 F.Supp. 1305, 1310–12 (S.D.N.Y.1982) held that because deliberate omissions are known

*tion 405(a): What kind of Oxymoron Makes a Deliberate Error?*, 60 N.Y.U.Law Rev. 956 (1985).

to the claimant, they cannot be "discovered" or at most would be discovered upon examination of the first printed copy. This holding was criticized by Judge Friendly in *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189 (2d Cir.1985); he held that the § 405 cure provision is not limited to unintentional omissions. In short, even if the omission of the copyright notice was deliberate, it would be subject to cure for five years. Because I find *Sparkle Toys, Inc.* controlling here and since it would be presumptuous of me to attempt an elaboration of Judge Friendly's analysis, I note it at length.[2] Lacking any

2. On its face, § 405(a)(2) is not restricted to unintentional omissions. Its language permits cure if registration is made "within five years after *the publication without notice*"—not, as Sparkle would read it, "the [unintentional] publication without notice." The difference between the broad language of § 405(a) and the more limited language of § 21 of the 1909 Act ... shows that Congress no longer wished to deal only with omissions of notice due to accident or mistake. Moreover, the legislative history of the 1976 Act affords ample demonstration that Congress intended to bring deliberate omissions within the ambit of § 405(a)(2). The House Report comments with respect to § 405(a) that "[u]nder the proposed law a work published without any copyright notice will still be subject to statutory protection for at least 5 years, whether the omission was partial or total, *unintentional or deliberate.*" House Report, *supra*, at 147 (emphasis added), *reprinted in* 1976 U.S.Code Cong. & Ad.News at 5763. Professor Nimmer adds:

> In explaining the same statutory text [§ 405], the Register of Copyrights stated: "... it was urged that, to make the validity of a copyright turn on the question of whether the omission of notice was 'deliberate' or 'unintentional' would involve impossible problems of proof and would result in uncertainty and injustice. After considering these arguments we concluded that questions involving the subjective state of mind of one or more persons and their ignorance or knowledge of the law should be voided if at all possible ... we decided that the bill should drop any distinction between 'deliberate' and 'inadvertent' or 'unintentional' omission and, subject to certain conditions, should preserve the copyright in all cases." Reg.Supp.Rep., p. 105.

2 Nimmer, *supra*, § 7.13[B][3], at 7–96 n. 43.

Against this, Sparkle relies on Judge Sand's opinion in *Beacon Looms, Inc. v. S. Lichtenberg & Co.*, 552 F.Supp. 1305 (S.D.N.Y.1982), and on Professor Nimmer's approval of the reasoning of that opinion, *see* 2 *Nimmer, supra*, § 7.13[B][3].

The result in *Beacon Looms* depended almost entirely on the language in § 405(a)(2) that reasonable efforts to affix notice need begin only "after the omission has been discovered." Judge Sand reasoned that since "one cannot discover an omission that has been deliberate," 552 F.Supp. at 1310, to permit the cure of deliberate omissions would do violence to the unambiguous "plain meaning" of the statute. *See contra O'Neill Developments, Inc. v. Galen Kilburn, Inc.*, 524 F.Supp. 710 (N.D.Ga.1981) (deliberate omissions curable under § 405(a)(2); reasonable efforts requirement applies to 'copies published after discovery of the fact that the existence of a copyright has become an issue.'). In view of this supposedly plain meaning, Judge Sand felt compelled to ignore the legislative history outlined above.

With due respect, we cannot agree with *Beacon Looms*. The operative language of the statute in this context comes at the beginning of § 405(a), covers all three methods of cure, and is not restricted in any way. The language relied on by Judge Sand, which comes at the end of § 405(a)(2), is relevant only with respect to unmarked copies that have been publicly distributed in the United States. More important, the premise of the argument— namely, that a deliberate omission cannot be "discovered"—is unsound. As discussed above, an assignee or licensee may effect cure under § 405(a)(2) on behalf of itself and its assignor or licensor. In such a situation—the very one presented in this case—no violence is done to the statutory language by saying that the omission, though deliberate on the part of the assignor or licensor, was "discovered" by the person later attempting to cure it. Similarly, a deliberate omission at a lower level of a corporate hierarchy might well be "discovered," in realistic terms, by someone at a higher level. Instances like these at least indicate that the "discovered" language does not reveal a plain intent to exclude all deliberate omissions.

The meaning that § 405(a)(2) does not apply to intentional omissions thus seems to us anything but "plain." At most, the "discovered" language introduces an ambiguity. It thus becomes appropriate to look at the legislative history, and this demonstrates that intentional as well as unintentional omissions were intended to be made curable. While there may be some difficulties in determining what constitutes "a reasonable effort to add notice to all copies ... that are distributed to the public in the United States after the omission has been discovered" in cases where the omission was intentional and the person attempting to cure is the same person who omitted notice, as argued in *Beacon Looms*, 552 F.Supp. at 1310–11, and 2 *Nimmer, supra*, § 7.13[B][3], at 7–96, these difficulties are by no means insuperable and constitute no sufficient reason for disregarding the declared legislative intent. We therefore conclude that the omission of notice from the toys, even if deliberate ... was subject to cure under § 405(a)(2), and we pass on

guiding precedent from the First Circuit, I adopt entirely Judge Friendly's ruling.

Effective as of March 1, 1989, the copyright law was again amended by the Berne Convention Implementation Act ("BCIA"); it made copyright notice permissible rather than mandatory, 17 U.S.C. § 401(a), though it did provide incentives for adding notice such as innocent infringer defense. The more important question to this case is what effect did the BCIA have on section 405 of the 1976 Act as it gave unnoticed pieces statutory protection for at least five years, provided there was registration within five years of publication and "reasonable efforts" made to affix notice on copies distributed to the public after discovery of the omission.

### III

■ Preliminarily, I find that the plaintiff has established, *prima facie*, ownership of and validity in the Swirled Hoop Earring.

> Reduced to most fundamental terms, there are only two elements necessary to the plaintiff's case in an infringement action: ownership of the copyright by plaintiff, and copying by the defendant.

3 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* § 13.01 at 13–5 (1993) (footnotes omitted). *Concrete Machinery Co. v. Classic Lawn Ornaments*, 843 F.2d 600, 605 (1st Cir.1988). The defendant in this preliminary injunction hearing is not placing in issue the five elements of ownership: (1) originality in the author; (2) copyrightability of the subject matter; (3) citizenship of the author so as to permit a claim of copyright; (4) compliance with the applicable statutory formality of registration; and (5) if the plaintiff is not the author, a transfer of rights or other relationship between the plaintiff and the author so as to constitute the plaintiff the valid copyright claimant. 3 *Nimmer on Copyright* § 13.01[A] at 13–64. This having been established, there is no need for me to discuss these various elements at this stage of the proceedings.

■ The defendant's response to the plaintiff's accusation of infringement is that the plaintiff failed to affix a copyright notice

in the statutorily prescribed form to the Swirled Hoop Earring; and since the BCIA amendments did not eliminate the need to cure omitted notices, the plaintiff forfeited its copyright for failure to comply. There is no doubt that the BCIA amendments specifically retained the cure requirement for those works that were first distributed without notice prior to the effective date of the BCIA, March 1, 1989. The issue in this case is whether a cure must be made as to all distributed pieces or only as to those copies distributed prior to March 1, 1989.

17 U.S.C.A. § 405(a), the cure provision, specifically reads in pertinent part:

> With respect to copies ... publicly distributed by authority of the copyright owner *before* the effective date of the Berne Convention Implementation Act of 1988 [March 1, 1989].
>
> > (2) [the copyright is not invalidated] if registration for the work has been made before or is made within five years after the publication without notice, and a reasonable effort is made to add notice to all copies or phonorecords that are distributed to the public in the United States after the omission has been discovered....

*Id.* (emphasis added).

The plaintiff, in urging that this provision applies only to copies distributed before March 1, 1989, reasons:

> [t]he cure provision set forth in subpart (2) is modified by, and limited by, the language of § 405(a). In other words, the copies described in subpart (2) (copies distributed after discovery of omission of notice) are a subset of the set of copies described in § 405(a) (copies distributed before March 1, 1989) (and, therefore, applies only to copies distributed before March 1, 1989).

The defendant emphatically exclaims that, "... a review of the statute, and all authorities that have had an opportunity to review the statute, compel the rejection of this unfounded claim." It argues that notwithstanding the BCIA, Congress retained the pre-existing requirements for curing an omission

to the question whether Hasbro in fact effected      cure.

of notice on copies that were first distributed without notice prior to the effective date of the BCIA (March 1, 1989). In support, it cites *Encore Shoe Corp. v. Bennett Industries, Inc.,* 18 U.S.P.Q.2d 1874, 1991 WL 27412 (D.Mass.1991). *Cf. Kakizaki v. Riedel,* 811 F.Supp. 129, 131 (S.D.N.Y.1992); 2 *Nimmer on Copyright* § 7.13[B], at 7–120 n. 54 (1993).

## IV

Professor Nimmer strongly supports the defendant:

> Does the reasonable effort requirement apply after March 1, 1989? ... [T]he language of 17 U.S.C. Sec. 405(a), as amended by the BCIA to apply to unnoticed works published before March 1, 1989, imposes equally the obligations to register within five years *and* to use reasonable efforts to add notice to copies thereafter distributed in the United States. Given the conclusion previously reached that curing registration is required during the Berne era, it is difficult to resist the conclusion that notice is equally required.

*Id.*

In *Encore Shoe Corp. v. Bennett Industries, Inc., supra,* the court noted:

> At one point, plaintiff asserted that, pursuant to 17 U.S.C. § 405 (1988), it need not cure inadequate notice on works published after the effective date of the Berne Convention Implementation Act (BCIA), March 1, 1989. This reading of § 405 effectively ignores part of the statute, however. The cure provisions pertaining to ineffective notice were retained in § 405, even after emendation to accommodate Berne provisions abnegating the need for notice formalities. Thus, under the terms of § 405, if notice had been sufficient for pre-BCIA publications, the omission of notice in post-BCIA publications would not require cure. But if the pre-BCIA publications bear defective notice, then "a reasonable effort" must be made to add notice to all copies after the defective notice has been discovered, even if discovery occurs

after March 1, 1989. *See* Nimmer § 7.13(B)(2), n. 54.

*Id.* at 1876 n. 9, 1991 WL 27412.

The plaintiff's response is that this language is mere *dicta* from a footnote, from an unreported decision, in which the court denied a motion for summary judgment. Be that as it may, the sheer logic of the statement and its compatibility with Nimmer's pronouncement on this issue, is very impressive. The plaintiff further urges that to impress upon the statute such interpretation is tantamount to rewriting it. I do not agree. As the defendant argues at page 25 of its post trial brief:

> [r]eview of the statute itself demonstrates the fallacy of the plaintiff's attempt to read § 405(a) as limiting the cure to only those copies prior to March 1, 1989. The introductory paragraph makes it clear that the cure provisions in § 405(a)(2) are necessary if the claimant has failed to place a copyright notice on "copies ... distributed by authority of the copyright owner before [March 1, 1989]", and thus clearly applies here in view of plaintiff's admission that this work was first published without notice in 1988. Then, the statute continues to the remedial provisions contained in subpart (2), by including the following requirement in order to avoid the invalidation of copyright that would otherwise follow: "a reasonable effort *is* made to add notice to *all* copies ... that *are* distributed to the public in the United States after the omission has been discovered." (emphasis supplied). Everything in this subpart (2) speaks of an all-inclusive requirement for the cure. If Congress had meant to limit the reasonable efforts only to copies that had been distributed prior to the effective date of the Berne amendment, then it would have limited those efforts only to all copies that "were distributed prior to March 1, 1989." Congress made no such limitation. Further, in view of the fact that Congress had made changes to § 405 so as to limit its applicability where the omission had occurred prior to March 1, 1989, the failure to limit remedial cure provisions to those copies cannot be said to have been an oversight.

Succinctly stated, an analysis with which I agree and need not further embellish.

Based on the foregoing, I conclude that there is an obligation to use reasonable efforts to add notice, after the omission has been discovered, to copies distributed after March 1, 1989 and that registration be within five years after the publication without notice. In short, the obligation attaches to all distributed copies.

## V

Having concluded that reasonable effort must be exercised as to all published copies after the omission has been discovered, enforceability of the copyright stands or falls on my factual findings as to whether or not this determinative element has been satisfied.

The decisional law on this point is clear. In *Princess Fabrics, Inc. v. CHF, Inc.*, 922 F.2d 99 (2d Cir.1990), the plaintiff alleged copyright infringement of a fabric lace pattern. The district court dismissed the complaint and the Second Circuit affirmed. Plaintiff Princess Fabrics began selling the fabric lace pattern in 1985 and secured a copyright registration in 1988. Defendant CHF began manufacturing a slightly modified version of the lace pattern in 1987 or 1988. Princess Fabrics filed suit on January 27, 1989. In the answer, CHF alleged that some bolts of the fabric did not contain any notice of copyright and Princess Fabrics had therefore failed to give notice of copyright or to cure a defective notice of copyright.

Princess Fabrics argued that it had made reasonable efforts to cure the defect under § 405(a). The court held that "[w]hat constitutes reasonable effort is a question of fact." *Id.* at 103. Princess Fabrics had notice that the copyright might be defective by the allegations contained in CHF's answer (or by allegations made in a deposition two days later) which was six days before the trial. The district court held that the efforts to cure should have begun immediately, especially in light of the fact that the trial was scheduled for a mere six days away. Thus, the district court held that Princess Fabrics had forfeited its copyright. Princess Fabrics argued that it did not have enough time to cure the defect before trial. The appellate court agreed with the district court's findings. "[W]e cannot find that the district court erred in finding that there was a sufficient time in which to take at least the first step towards cure, particularly against the background of no prior investigation into the specifics of the matter." *Id.* It is important to note that the court here was discussing six days at the most and four days at the least.

Chief Judge Oakes dissented because he felt there was not sufficient time to cure. Noting that " 'reasonable effort' has yet to be well defined," *id.* at 104 (Oakes, J., dissenting) (citations omitted), he stated that "the 'reasonable efforts' requirement could not possibly mean that a copyright owner must act precipitously, without time to reflect or consult counsel, or forever forfeit his copyright," *id.* at 105.

In *Valve & Primer Corp. v. Val–Matic Valve & Mfg. Corp.*, 730 F.Supp. 141 (N.D.Ill. 1990), the court held that the plaintiff had forfeited its copyright for failure to promptly cure the defective notice. In this case, plaintiff Valve & Primer Corp. sent out bulletins to its consumers containing a list of its products. Two bulletins did not contain notice of copyright for two kinds of valves because the copyright registrations for these valves were not effective until after the publication of the bulletins. Approximately 5000 copies of each bulletin were mailed to the consumers without proper copyright notice. Further, Valve & Primer Corp. did not add notice of copyright until subsequent editions of the bulletin.

The court held that Valve & Primer failed to make reasonable efforts to correct the omission. "V & P took no action whatsoever until new issues of the bulletins were to be published." *Id.* at 144. Revised versions were sent out seven months and eleven months after Valve & Primer should have known that the bulletins lacked notice. "V & P did not send a letter to those on its mailing list stating that it was asserting a copyright over the bulletins, accompanied by a sticker to affix to the bulletins." *Id.* " 'Implicit in the concept of "reasonable effort" under § 405(a)(2) is the expectation that an expenditure of time and money over and above

96

that required in the normal course of business will be made.' " *Id.* at 144 (citing *Videotronics, Inc. v. Bend Electronics,* 586 F.Supp. 478, 483 (D.Nev.1984)). The court found that Valve & Primer had made no expenditure above and beyond its normal course of business and therefore the copyright was forfeited.

In *House of Hatten, Inc. v. Baby Togs, Inc.,* 668 F.Supp. 251 (S.D.N.Y.1987), the court also found the copyright to have been forfeited due to lack of prompt efforts to cure a defective notice. The court held that any cure must be "prompt" and "reasonable in light of the circumstances of each case." *Id.* at 256. The plaintiff made no direct efforts to reach its retailer customers to encourage them to affix notice of copyright labels apparently because " 'the expense would not be worth the trouble.' " *Id.* at 258. In determining whether to issue a preliminary injunction, the court found that the plaintiff had not shown that it made reasonable efforts to affix copyright notices to each product nor the impracticability of such efforts. Further, the court found that the plaintiff waited over five months to assert its claim. "We have found no case, nor have we been cited to any, in which such a lapse of time has resulted in the grant of preliminary relief." *Id.* Therefore, the court denied the preliminary injunction.

Finally, in *Gemveto Jewelry Co., Inc. v. Jeff Cooper, Inc.,* 568 F.Supp. 319 (S.D.N.Y. 1983), the court found that plaintiff Gemveto had not expended reasonable efforts to cure the defective copyright notice. Gemveto first published the jewelry pieces in question in 1979. Nearly two years later, it attempted to file for copyright registration. However, the Copyright Office rejected the applications because the items were not marked with copyright notice. Gemveto filed suit for copyright infringement and then, six months after the first rejection by the Copyright Office, filed for registration again. The registration was again rejected. The court held that Gemveto knew for the six months between applications of the defect and that such a delay cannot be considered "prompt" action to cure. Therefore, the court dismissed the complaint for infringement.

■ In summary, these cases demonstrate that the question of reasonable efforts is a question of fact which must be determined from the circumstances in the particular case. Further, reasonable efforts must be prompt and above and beyond the normal course of business. All of these cases found that the efforts at issue, ranging from six days to eleven months, were not prompt.

■ The discovery of the omission is the revelation of a serious flaw in the claimant's exclusivity in his creative work. The statute permits a cure conditioned on "reasonable" conduct. Each case must be decided on its own facts. From the case law and the statute, I conclude, to remedy the defect, all that is required is a well balanced approach. This, at a minimum, mandates prompt, not expressly instantaneous, action and something above and beyond the normal routine of business; in substance, a well balanced extra effort. I do not find the plaintiff has exerted such conduct.

■ The plaintiff asserts that its efforts to add notice to the Swirled Hoop Earring in the hands of its retailers after discovery of the omission in July of 1992 were entirely rational for three reasons: 1) after discovery of the omission, there were no such earrings in the hands of its retailers; 2) prior to discovery of the omission, it had sent "story cards," discussed *supra,* starting in 1990, with each pair of Swirled Hoop Earrings it sold; and 3) it promptly noticed all pieces subsequent to July 1992.

None of these reasons are acceptable. To begin with, they are focused only to earrings distributed after the omission was discovered in 1992 and ignore all earrings sold prior to March 1, 1989. The cure requirement applies to all earrings, whether distributed prior or subsequent to the BCIA. Furthermore, though the defendant does not contest that the plaintiff promptly noticed all pieces subsequent to July 1992, the date it claimed it received actual notice, these items do not fall within the curing concept for purposes of evaluating "reasonable efforts" to cure. In *Shapiro & Son Bedspread Corp. v. Royal Mills Assoc.,* 764 F.2d 69, 73 (2d Cir.1985), in evaluating the claimant's efforts, the court said "that such efforts cover[ed] all copies

having defective notice *at the time the defect is discovered. . . .*" (emphasis added). It follows, adding notice to items to be manufactured is of no concern—they do not fall within the "reasonable effort" evaluation of § 405.

It is important to note that the law attaches the cure responsibility not only when the plaintiff knew, but as well when the plaintiff should have known the Swirled Hoop Earring was not copyrighted. *Donald Frederick Evans v. Continental Homes, Inc.*, 785 F.2d 897, 911 (11th Cir.1986); *Valve & Primer Corp. v. Val–Matic Valve & Mfg., supra* at 144. The claimant cannot close his eyes to potential problems and then hide behind the shield of actual notice. Such a conclusion would be absurd. The earrings sold prior to the actual notice of infringement in 1992 must be judged by this standard.

There are certain absolutes in this case:

a) The earring created in 1987 was first offered for sale in April 1988 without a copyright being noticed. At that time, the company had a policy of screening its newly created piece to determine which would or would not be copyrighted, deferring action to first determine marketability. This piece was distributed without copyright protection, even though it was a "signature" item—a prized piece.

b) The earring remained on the market without copyright to July of 1992—a period of nearly four and one-half years.

c) Every piece carried a trademark.

d) The plaintiff vice president testified that 25–30 copyright registrations maintained by the plaintiff are periodically reviewed.

Given these facts, I must conclude the plaintiff should have known of the omission. The plaintiff's contention that it first learned and became aware that the Swirled Hoop Earring was not copyrighted was in July 1992, does not help its cause. I cannot accept that Garnier, an international corporation, ultimately sophisticated in the need for copyrighting, was so indifferent to one of its best selling, prized pieces. Giving it the benefit of every doubt, it certainly should have known of the omission. Besides, every piece carried a trademark—I cannot accept

that in accomplishing this task of stamping each piece with a trademark, the absence of a copyright would not have been noticed. And the vice president's testimony that 25–30 copyright registrations maintained by the plaintiff are periodically reviewed, seals my conclusion that the plaintiff should have known of the omission. I cannot accept that in this screening review process, it never realized or should have realized that one of its signature pieces had not been copyrighted.

## VI

I find the plaintiff's efforts to cure fall far short of the mark. Even after the discovery, as it alleges, the plaintiff merely sent a letter to approximately 50 of its 150 customers over a year later. And then the letter merely said, "we are contacting our customers who have purchased our swirled hoop earrings to notify them that this style is copyrighted by Charles Garnier—Paris as an original design." It did not mention the omission of notice nor advise its customers to affix notice by some designated means to the pieces on hand as required by Section 401(c).

Section 401(c) requires that notice of copyright "shall be *affixed* to the copies in such manner and location as to give reasonable notice of the claim of copyright." 17 U.S.C. § 401(c) (1988) (emphasis added). The purpose of section 405 is to provide different ways in which an omission of copyright may be cured in order to bring the work in conformity with the requirements of section 401. Thus, when read together, sections 401 and 405 require that an effort to cure omitted notice must include an effort to affix notice to the copyrighted item. Plaintiff's October 26, 1992 letter to its customers did not include any direction on how to affix notice to the swirled hoop earrings. Therefore, the October 26 letter is inadequate as a "reasonable effort." Furthermore, no acceptable reason was given why the letter was not sent to all of its customers. A letter to only one-third of its retailers is certainly not some reasonable extra effort to effect a cure—indeed, it is even something less than what can be expected in the normal course of business.

Copies in the possession of a claimant's distributor which have not reached the public must be included within the corrective measures. *See Shapiro & Son Bedspread Corp. v. Royal Mills Assoc., supra,* at 73–74; *M. Kramer Mfg. Co., Inc. v. Andrews,* 783 F.2d 421, 424 (4th Cir.1986) ("[A] copyright owner does have an obligation to add copyright notice to [unnoticed items] that are stored or that have been distributed to retail dealers but not yet to the public"); *Sunset Lamp Corp. v. Alsy Corp.,* 698 F.Supp. 1146, 1152 (S.D.N.Y.1988) ("Such a reasonable effort [to cure] would have to include both the [unnoticed items] in plaintiff's own possession and those that have been distributed to retailers but not yet sold.") A notice must be "affixed" to the work, as required by section 401(c). "In general, publication of a work without a proper notice of copyright affixed injects the work into the public domain. *See* 17 U.S.C. § 405(a) (1982); 2 Nimmer, Nimmer on Copyright § 7.14[A] (1984)." *Shapiro, supra,* at 72.

In addition to what I have already found, and finding that the plaintiff knew or should have known the Swirled Hoop Earring was not copyrighted, inaction for four and one-half years is fatal. *Princess Fabrics, Inc. v. CHF, Inc., supra; Valve & Primer Corp. v. Val–Matic & Mfg. Corp., supra; House of Hatten, Inc. v. Baby Togs, Inc., supra;* and *Gemveto Jewelry Co., Inc. v. Jeff Cooper, Inc., supra,* fully support this conclusion.

Finally, the cease and desist letter: I must conclude that the letter is of no consequence. In *Videotronics, Inc. v. Bend Electronics,* 586 F.Supp. 478, 484 (D.Nev.1984), the court stated, and I agree:

> [t]o excuse compliance with the notice requirements on such a basis [of an omitted notice coupled with a failure to cure] would tend to reduce the incentive to comply, since a copyright owner who omitted notice would be able to protect his rights simply by giving actual notice to infringing competitors, who would then be barred from defending on the basis of defective notice.

Since I have found that the copyright has been forfeited, there is no need to discuss the remaining defenses urged by the defendant.

■ My holding that copyright in the swirled hoop earring has been forfeited by Garnier is sufficient basis for denying Garnier's motion for preliminary injunction; that is, the plaintiff has not "exhibited a likelihood of success on the merits." The failure to satisfy any one of the four criteria for a preliminary injunction denies entitlement to such relief.

> "In the First Circuit, a plaintiff must satisfy four criteria in order to be entitled to a preliminary injunction. The Court must find: (1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction." *Women's Community Health Ctr., Inc. v. Cohen,* 477 F.Supp. 542, 544 (D.Me.1979) (citations omitted).

*Planned Parenthood League of Massachusetts v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981). The First Circuit noted that with respect to the application of this standard:

> None of these criteria should be slighted. The moving party must exhibit a likelihood of success on the merits; indeed, the probability-of-success component has loomed large in cases before this court. *See, e.g., Planned Parenthood League v. Bellotti,* 641 F.2d at 1009–1022; *Conservation Law Foundation of New England, Inc. v. Andrus,* 623 F.2d 712 (1st Cir.1979); *Grimard v. Carlston,* 567 F.2d 1171 (1st Cir. 1978).

*Auburn News Co. v. Providence Journal Co.,* 659 F.2d 273, 277 (1st Cir.1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).

■ Nevertheless, I feel it should be noted that the plaintiff has failed to satisfy even the lesser standard of "irreparable harm." As the defendant points out, and I agree completely:

> This failure is demonstrated not only by plaintiff's obvious delay of ten months in seeking injunctive relief (and its 4½ year delay in allegedly failing to discover that it

had not included a copyright notice for this piece), but also by its total indifference to the manufacture and sale by others of an infringement of plaintiff's swirled hoop earring. At the time of the hearing on September 10, 1993, Garnier's Vice–President and sole witness had no idea who manufactured the earring sold by Maurice Badler although plaintiff believed that said manufacturer sold to retailers other than Badler. [Tr. p. 81:4–23]

The alleged "irreparable injury" ... commenced, according to plaintiff, in July, 1992 when Garnier discovered Andin's earring although Andin had been selling the earring for two years at that time. There is no correlation between Andin's sales and plaintiff's alleged loss of sales. As Mr. Ferrante suggested, the swirled hoop may simply have "run its course." [Tr. 87:21–88:6]

Defendant's Brief of January 31, 1994, at p. 2.

The plaintiff's motion for a preliminary injunction is denied.

SO ORDERED.